635 S.E.2d 644

**Michael J. McEACHERN, Appellant,**

v.

**SOUTH CAROLINA EMPLOYMENT SECURITY COMMISSION, Respondent.**

**No. 4154.**

Court of Appeals of South Carolina.

Submitted Sept. 1, 2006.
Decided Sept. 25, 2006.

Michael J. McEachern, of Port Royal, pro se Appellant.

Harold W. Funderburk, Jr., of the South Carolina Employment Security Commission, of Columbia, for Respondent.

GOOLSBY, J.:

Michael J. McEachern appeals from a circuit court order affirming the denial of his claim for unemployment benefits by the South Carolina Employment Security Commission (the Commission). We affirm, finding substantial evidence supports the Commission's ruling.[1]

## FACTS

McEachern began working in 1991 for the Roof Doctor, a business he formed that provides residential and commercial roofing services.[2] McEachern, the president of the corporation, is responsible for providing job proposals and estimates. He is the only person performing that function. His wife, Marilyn Smith, serves as the office manager.

Since 1991, the Roof Doctor has maintained an average of about twelve employees. When business slumped in 2002, the Roof Doctor laid off some employees, keeping a "skeleton crew" of about five or six employees, including McEachern, and sold some equipment. Because of the business downturn, McEachern eventually stopped taking a salary altogether. According to Smith, McEachern drew a salary of only

---

1. Because oral argument would not aid the Court in this appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

2. The business began as a sole proprietorship; McEachern incorporated it several years later.

$3,367.68 during the second quarter of 2003, compared with more than $11,000.00 for the previous quarter. Further, for the ten weeks immediately prior to the hearing in this matter, McEachern had not drawn a salary so the company could pay some of its outstanding financial obligations. McEachern continued, however, to work at least sixty hours a week, preparing bids and seeking jobs for the company. Business had been picking up, and the Roof Doctor expected to soon be able to resume paying McEachern a salary. McEachern had no plans to close the business or to look for other employment.

In June 2003, McEachern filed a claim for unemployment benefits while he continued to work for his company. On June 17, 2003, the Commission's Claims Adjudicator found McEachern did not meet the statutory eligibility requirement of being unemployed through no fault of his own because "as an officer of a corporation, [he had] control over [his] unemployment benefits." McEachern was deemed ineligible for benefits as of June 1, 2003.

On July 17, 2003, the Appeal Tribunal of the Commission upheld the Claims Adjudicator's determination. The Tribunal noted section 41–35–110 of the South Carolina Code provides a claimant must have unrestricted exposure to the labor market and be unemployed through no fault of his own. The Tribunal stated:

> The testimony reveals the claimant is a corporate official of an active business. It is unfortunate that the business slowed and has not sufficiently increased in order to allow him to receive pay for his services. However, since the claimant is not actively seeking other employment and is actively involved in the business, he does not meet the eligibility requirements of the law to receive benefits.

The full Commission confirmed the decision of the Appeal Tribunal, noting McEachern "continues to work as much as sixty hours a week for the employer and expects his business to return to profitability." The Commission found McEachern "is not unemployed since he continues to work in excess of the customary full-time hours for the employer."

McEachern appealed the Commission's ruling. The circuit court affirmed, stating substantial evidence supported the Commission's determination that McEachern did not meet the

legal definition of "unemployed." The court found the Commission's decision was reasonable and not controlled by an error of law or an abuse of discretion.

## STANDARD OF REVIEW

 The Commission is an agency governed by the Administrative Procedures Act (APA).[3] Under the APA, a reviewing tribunal may reverse or modify the decision of the agency where it is arbitrary or capricious or constitutes an abuse of discretion.[4] Reviewing courts apply the substantial evidence rule, under which the agency's decision is upheld unless it is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record."[5]

 "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached."[6] "It is more than a mere scintilla of evidence, but is something less than the weight of the evidence."[7] "Furthermore, the possibility of drawing two inconsistent conclusions from the evidence does not prevent a court from concluding that substantial evidence supports an administrative agency's finding."[8]

## LAW/ANALYSIS

On appeal, McEachern argues the Commission erred in denying his claim for benefits. We disagree.

Section 41–35–110 of the South Carolina Code governs the requirements for eligibility and provides as follows:

---

3. *Gibson v. Florence Country Club*, 282 S.C. 384, 386, 318 S.E.2d 365, 367 (1984).

4. S.C.Code Ann. § 1–23–610(D)(f) (2005).

5. *Id.* § 1–23–610(D)(e).

6. *Merck v. South Carolina Employment Sec. Comm'n*, 290 S.C. 459, 461, 351 S.E.2d 338, 339 (1986).

7. *Porter v. South Carolina Pub. Serv. Comm'n*, 333 S.C. 12, 20–21, 507 S.E.2d 328, 332 (1998).

8. *Id.* at 21, 507 S.E.2d at 332.

An unemployed insured worker shall be eligible to receive benefits with respect to any week only if the Commission finds that:

(1) He has made a claim for benefits. . . .

(2) He has registered for work and thereafter has continued to report at an employment office in accordance with such regulations as the Commission may prescribe, *except that the Commission may, by regulation, waive or alter either or both of the requirements of this paragraph as to individuals attached to regular jobs* . . . .

(3) He is able to work and is available for work at his usual trade, occupation, or business or in such other trade, occupation, or business as his prior training or experience shows him to be fitted or qualified. . . .

(4) He has been unemployed for a waiting period of one week. . . .

(5) Claimant is separated, *through no fault of his own*, from his most recent bona fide employer. . . .

(6) He participates in reemployment services. . . . [9]

A person is deemed "unemployed," as used in this context, "in any week during which he performs *no services* and with respect to which no wages are payable to him *or* in any week of *less than full-time work* if the wages payable to him with respect to such week are less than his weekly benefit amount." [10]

 "The burden is on a claimant to show compliance with benefit eligibility requirements." [11] "This includes a duty to show availability for work and a reasonable effort to obtain employment." [12] "The purpose of the availability requirement is to provide a test for determining whether a claimant is actually and currently attached to the labor market." [13]

---

9. S.C.Code Ann. § 41–35–110 (1986 & Supp.2005) (emphasis added).

10. *Id.* § 41–27–370(1) (1986) (emphasis added).

11. *Wellington v. South Carolina Employment Sec. Comm'n*, 281 S.C. 115, 117, 314 S.E.2d 37, 38 (Ct.App.1984).

12. *Id.*

13. *Id.*

McEachern contends the Commission erred in finding him ineligible on the basis that he was not seeking other employment and, as an officer of the corporation, he was not in a position to be involuntarily unemployed. He notes under section 41–35–110(2) of the South Carolina Code, the Commission may, by regulation, waive the requirement that an individual register for work. Citing Regulation 47–20(B) [14], McEachern argues the Commission should have characterized him as having "job-attached unemployment." McEachern states that, because he was job-attached, i.e., he had a regular job to which he could return, he was not required to seek alternative work and could continue working at his own company.

"Job-attached unemployment" is defined in Regulation 47–20(B) as "the unemployment of any individual who, during any week, earns less than his weekly benefit amount, is employed by a regular employer, *and works less than his normal customary full-time weekly hours* because of a lack of full-time work." [15]

We find there is substantial evidence to support the Commission's determination that McEachern was not unem-

---

**14.** 24 S.C.Code Ann. Regs. 47–20 (Supp.2005). This regulation provides as follows:

47–20. Types of Unemployment.
A. "Non–Job–Attached Unemployment" means the unemployment of any individual in any week during which he performs no services and with respect to which no wages or wages totaling less than his weekly benefit amount are payable to him. Claims for such benefits will be filed directly with the local Commission office by the individual and not an employer. The claimant will register for work with the Commission office and seek full time employment while pursuing such claim for benefits.
B. "Job–Attached Unemployment" means the unemployment of any individual who, during any week, earns less than his weekly benefit amount, is employed by a regular employer, and works less than his normal customary full-time weekly hours because of a lack of full-time work. Any claim for benefits made under this definition will be initiated by the employer and a continuing employer-employee relationship is understood. In connection with any claim for benefits for job-attached unemployment, the claimant shall declare the amount of his earnings [from any source] for the seven day period for which he claims job-attached benefits.

**15.** *Id.* 47–20(B) (emphasis added).

ployed because he continued to work in excess of customary full-time hours. At the hearing in this matter, McEachern acknowledged he worked at least sixty hours per week—well in excess of a normal work week—performing essential services for the company in order to meet other expenses, including the salaries of the "skeleton crew" he retained. He admittedly was not seeking alternative employment because he expected his business to return to profitability in the near future.[16] Thus, even applying the regulation's definition of "job-attached unemployment," as urged by McEachern, he was not "unemployed" because he was not working fewer hours as required by the regulation.[17]

Although it is unfortunate that McEachern's business suffered a downturn, as the Commission notes in its brief, there is no provision that would allow it to subsidize individuals who choose to operate a business at a loss and continue to work while deferring a salary in order either to pay other employees or to meet other financial obligations.

The unemployment statutes and regulations, as currently written, are not designed to allow a corporate officer to elect to pay himself during profitable months, but then forego pay and receive unemployment benefits during less profitable months, as it would not be feasible for the Commission to sustain private businesses in this manner.[18]

---

**16.** McEachern indicated his business is somewhat seasonal. When talking about the fact that he previously employed nearly a dozen workers and sometimes "twice that," McEachern stated: "It's kind of a seasonal business and we fully expect that it will return to that if we can ride this out."

**17.** *Cf. Rieth v. Adm'r, Ohio Bureau of Employment Servs.,* 43 Ohio App.3d 150, 539 N.E.2d 1146, 1148–49 (1988) (holding a corporate president was unemployed after laying himself off following substantial business losses and that he was "available for work" where he continued to work for his business only a few hours a week and actively contacted potential employers in search of alternative work).

**18.** *See, e.g., Alexander v. Walnut Fork Design,* 267 Ark. 1130, 593 S.W.2d 493, 493–94 (Ct.App.1980) (finding a corporate president and hourly wage earner was not unemployed within the meaning of the state's unemployment security law and not eligible for benefits where he was laid off when the corporation ran out of work, but was expected to return to work with the same corporation within two months and was not seeking alternative employment); *Child v. Bd. of Review of Indus.*

Because of our narrow scope of review, we must affirm the Commission if there is substantial evidence, which is less than the weight of the evidence, to support the Commission's determination. In this case, there is substantial evidence to support the Commission's findings. Accordingly, the Commission's ruling is

**AFFIRMED.**

BEATTY and WILLIAMS, JJ., concur.

*Comm'n,* 8 Utah 2d 239, 332 P.2d 928, 929 (1958) ("A president of a corporation who is also manager, who has year-round responsibility to operate the business of the corporation and does so, cannot by purportedly laying himself off as manager in those periods when there may be no actual business activity, but when his corporate duties and management activity persist in the pursuit of future or continued business of the company, obtain unemployment benefits. He is much in the same position as a man working on a deferred commission payment basis who certainly cannot be said to be unemployed during the time the commission actually is not paid, but earned.").