**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Countrywood Nursing, LLC, Appellant,

v.

South Carolina Department of Health and Human Services, Respondent.

Appellate Case No. 2015-001986

―――――――――

Appeal From the Administrative Law Court
Deborah Brooks Durden, Administrative Law Judge

―――――――――

Unpublished Opinion No. 2017-UP-345
Heard February 8, 2017 – Filed August 9, 2017

―――――――――

**AFFIRMED**

―――――――――

Daniel J. Westbrook and Alice Vincenza Harris, both of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Appellant.

W. Allen Nickles, III, of Nickles Law Firm, of Columbia, for Respondent.

―――――――――

**PER CURIAM:** Countrywood Nursing, LLC, (Countrywood) appeals the Administrative Law Court's (ALC's) determination the Department of Health and Human Service (DHHS) is allowed to recoup overpayment of Medicaid funds from

it based on audits of three cost report periods. Countrywood asserts it is a third-party beneficiary to DHHS's contract (the Contract) with the South Carolina State Auditor's Office (SAO) and it has standing to assert rights under the Contract under the public importance exception. Countrywood also asserts DHHS cannot recoup the funds from Countrywood because the SAO failed to issue timely audit reports in violation of both the Contract and the contract between DHHS and Countrywood (Facility Contract). We affirm.

1. We disagree with Countrywood's assertion it is a third-party beneficiary to the Contract. *See Wogan v. Kunze*, 366 S.C. 583, 604, 623 S.E.2d 107, 118 (Ct. App. 2005) ("Generally, a third person not in privity of contract with the contracting parties has no right to enforce a contract." (quoting *Goode v. St. Stephens United Methodist Church*, 329 S.C. 433, 445, 494 S.E.2d 827, 833 (Ct. App. 1997))); *id.* ("However, when the contract is made for the benefit of the third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person."). As the ALC held, "[T]he purpose of the SAO Contract is to formalize the relationship between the two state agencies." The objective of the Contract was "the general administration and protection of the integrity of the Medicaid Program" and not, as Countrywood argues, to benefit nursing home facilities. Countrywood was the subject of the audits, not the intended beneficiary of the Contract. We therefore affirm the ALC and the hearing officer's determinations Countrywood was not a third-party beneficiary to the Contract.

2. We find no merit to Countrywood's argument it has standing to allege a breach of the Contract pursuant to the public importance doctrine. *See Sloan v. Greenville Cty.*, 356 S.C. 531, 547, 590 S.E.2d 338, 347 (Ct. App. 2003) ("A plaintiff must have standing to institute an action."); *id.* ("To have standing, one must have a personal stake in the subject matter of the lawsuit." (quoting *Sea Pines Ass'n for the Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res.*, 345 S.C. 594, 600, 550 S.E.2d 287, 291 (2001))); *ATC S., Inc. v. Charleston Cty.*, 380 S.C. 191, 198, 669 S.E.2d 337, 341 (2008) (recognizing the "public importance" exception to the general standing requirements); *id.* at 199, 669 S.E.2d at 341 ("The key to the public importance analysis is whether a resolution is needed for future guidance. It is this concept of 'future guidance' that gives meaning to an issue which transcends a purely private matter and rises to the level of public importance.") Countrywood asserts DHHS and the SAO violated the Contract by ignoring the restriction that, except for fraud investigations, only two cost report periods may be audited. It asserts, "This practice has a significant impact not only on Countrywood, but on

other providers, patients, and the entire Medicaid program." It would be illogical to find the public importance exception allows interference with two governmental entities' interpretation of the Contract to which they are the only parties, especially when the interfering party is seeking to avoid reimbursement of overpayments of public Medicaid funds.

3. We disagree with Countrywood's argument the audits were not performed timely according to the limitations period set forth in the Facility Contract.[1] *See Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct. App. 2007) ("In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties." (quoting *Southern Atl. Fin. Servs., Inc. v. Middleton*, 349 S.C. 77, 80, 562 S.E.2d 482, 484 (Ct. App. 2002))); *id.* at 499, 649 S.E.2d at 502 ("[A]n ambiguous contract is one capable of being understood in more senses than one, an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." (quoting *Carolina Ceramics, Inc. v. Carolina Pipeline Co.*, 251 S.C. 151, 155-56, 161 S.E.2d 179, 181 (1968))); *id.* at 500, 649 S.E.2d at 503 (stating evidence may be admitted to show the intent of parties when a contract is ambiguous); *id.* (stating the determination of intent is a question of fact); S.C. Code Ann. § 1-23-380(5)(e) (Supp. 2016) (providing a reviewing court will uphold the agency's decision unless it is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record"); *McEachern v. S.C. Emp't Sec. Comm'n*, 370 S.C. 553, 557, 635 S.E.2d 644, 647 (Ct. App. 2006) ("Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached." (quoting *Merck v. S.C. Emp't Sec. Comm'n*, 290 S.C. 459, 461, 351 S.E.2d 338, 339 (1986))). The Facility Contract provides: "Any disallowance made pursuant to an on-site audit shall be made in the final audit report, which shall be issued within three (3) years of the close of the contract period . . . ." Although the Facility Contract states "the contract period will be the rate period as defined by the South Carolina State Plan," the State Plan does not specifically define rate period. Jeff Saxon, Program Manager for DHHS, explained normally providers filed cost reports for October through September year end, which set the rate for the following October 1 payment period. However, different procedures apply based upon six months of operation when, as here, there is a change of ownership of a facility. Under these circumstances, the six months cost reports set the rate for extended periods of time,

_____

[1] As we have found Countrywood does not have standing to enforce the terms of the Contract, we do not address Countrywood's argument the SAO failed to perform the audits within the time limit set forth in the Contract.

including up to two years. Although an employee of DHHS and the SAO audit referred to November 29, 2007 to May 31, 2008; June 1, 2008 to September 30, 2008; and October 1, 2008 to September 30, 2009 as separate rate periods, Saxon ascribed a different definition to the term rate period. He explained only one cost report, the initial cost report period, was used to set the rate for these times. He stated Countrywood's initial cost report set the rate from November 29, 2007 through September 30, 2009. The rate calculated from the initial cost report remained the same while the changes in the reimbursement amount came from changes in inflation and the new updated standards. DHHS did not receive that report until February 17, 2009. Under Countrywood's argument, the time limits for the audit would begin to run almost a year before DHHS even received the report. The issue on appeal is whether the SAO concluded the audits of the cost reports within the time limits set by the Facility Contract. While several reimbursement amount changes occurred during the time of the initial cost report period due to other factors, the time for the SAO audit of the cost report should not begin to run until the conclusion of the rate period set by that cost report. This interpretation, as proposed by DHHS, was adopted by the Hearing Officer and ALC and was supported by substantial evidence. Accordingly, we affirm the ALC's decision DHHS is not barred from recouping the Medicaid payments.

**AFFIRMED.**

**LOCKEMY, C.J., and HUFF and THOMAS, JJ., concur.**