562 S.E.2d 482

**SOUTHERN ATLANTIC FINANCIAL
SERVICES, INC., Respondent,**

v.

**Donna F. MIDDLETON, Appellant.**

No. 3455.

Court of Appeals of South Carolina.

Heard Feb. 4, 2002.
Decided Feb. 25, 2002.
Rehearing Denied May 6, 2002.

78

David Popowski, of Charleston, for appellant.

Donald E. Rothwell, Scott L. Hood, and A. Todd Darwin, all of Rothwell Law Firm, of Columbia, for respondent.

ANDERSON, J.

Donna Middleton appeals an order of the master-in-equity granting judgment to Southern Atlantic Financial Services, Inc. ("Southern Atlantic"). Middleton argues the master erred because Southern Atlantic failed to give her written notice of default and right to cure before instituting its action for acceleration and foreclosure. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Donna Middleton refinanced her home with Southern Atlantic by executing a note and mortgage for $186,000 on June 25, 1996. On October 31, 1996, Middleton filed an action against Southern Atlantic and Carolina Federal Mortgage Company ("Carolina Federal"), a mortgage broker, seeking: (1) modification of the note to Southern Atlantic to reduce the interest rate; and (2) a return of $2,000 of Carolina Federal's $10,000 brokerage fee. In her complaint, Middleton admitted that she had refused to make the monthly payments prescribed by the note. The Circuit Court granted summary judgment to Southern Atlantic. This Court affirmed in an unpublished opinion (No. 99–UP–050), filed February 1, 1999. The Supreme Court denied Middleton's petition for writ of certiorari.

On December 26, 1996, Southern Atlantic brought this action seeking foreclosure of Middleton's mortgage. The suit was held in abeyance pending the outcome of Middleton's action against Southern Atlantic.

Following resolution of Middleton's suit against Southern Atlantic, the case was set for trial on May 23, 2000. On the day of the hearing, Middleton executed a fee simple deed conveying the property to a third party. Notwithstanding the

conveyance, Southern Atlantic proceeded with the action, seeking acceleration of the note.

At the hearing, Middleton argued Southern Atlantic failed to provide her with written notice of default and right to cure pursuant to the language of the note. On June 7, 2000, the master granted judgment to Southern Atlantic, finding Middleton's total indebtedness to be $311,457.63. The master held Middleton had failed to make payments on the note and the terms of the note did not require Southern Atlantic to provide written notice of default and right to cure. This appeal followed.

## ISSUE

Whether the maker of the note was entitled to written notice of default and right to cure prior to payee's acceleration of the note balance?

## STANDARD OF REVIEW

An action to construe a written contract is an action at law. *Pruitt v. South Carolina Med. Malpractice Liability Joint Underwriting Assoc.*, 343 S.C. 335, 540 S.E.2d 843 (2001); *State Farm Mut. Auto. Ins. Co. v. Moorer*, 330 S.C. 46, 496 S.E.2d 875 (Ct.App.1998).

In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties. *Williams v. Teran, Inc.*, 266 S.C. 55, 221 S.E.2d 526 (1976); *RentCo., a Div. of Fruehauf Corp. v. Tamway Corp.*, 283 S.C. 265, 321 S.E.2d 199 (Ct.App.1984). The parties' intention must, in the first instance, be derived from the language of the contract. *Jacobs v. Service Merchandise Co.*, 297 S.C. 123, 375 S.E.2d 1 (Ct.App.1988). If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect. *Jordan v. Security Group, Inc.*, 311 S.C. 227, 428 S.E.2d 705 (1993); *Blakeley v. Rabon*, 266 S.C. 68, 221 S.E.2d 767 (1976). Mere lack of clarity on casual reading is not the standard for determining whether a contract is afflicted with ambiguity. *Gamble, Givens & Moody v. Moise*, 288 S.C. 210, 341 S.E.2d 147 (Ct.App. 1986).

█ A contract is ambiguous when its terms are reasonably susceptible of more than one interpretation. *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 493 S.E.2d 875 (Ct.App. 1997); *see also Carolina Ceramics, Inc. v. Carolina Pipeline Co.*, 251 S.C. 151, 155–56, 161 S.E.2d 179, 181 (1968) ("[A]n ambiguous contract is one capable of being understood in more senses than one, an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning.") (citation omitted).

█ Whether a contract's language is ambiguous is a question of law. *South Carolina Dep't of Natural Resources v. Town of McClellanville*, 345 S.C. 617, 550 S.E.2d 299 (2001). Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties. *Id.; see also Charles v. B & B Theatres, Inc.*, 234 S.C. 15, 18, 106 S.E.2d 455, 456 (1959) ("[W]hen the written contract is ambiguous in its terms, ... parol and other extrinsic evidence will be admitted to determine the intent of the parties.") (citation omitted). The determination of the parties' intent is then a question of fact. *South Carolina Dep't of Natural Resources*, 345 S.C. at 623, 550 S.E.2d at 303.

### *LAW/ANALYSIS*

█ Middleton argues the terms of the note required Southern Atlantic to provide her with written notice of default and right to cure before instituting its foreclosure action.

The relevant provisions of the note provide:

**(B) Default**

If I do not pay the full amount of each monthly payment on the date that it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder *may* send me written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That

date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(original emphasis in headers, emphasis in text added).

Whether the language of a promissory note entitled the maker to notice of default and right to cure has been examined by our courts on several occasions. *See Allendale Furniture Company v. Carolina Commercial Bank,* 284 S.C. 76, 325 S.E.2d 530 (1985) and *Hendrix v. Franklin,* 292 S.C. 138, 355 S.E.2d 273 (Ct.App.1986).

In *Allendale Furniture Company,* Maker defaulted on a note it gave to Bank. Bank brought suit, seeking acceleration of the note and foreclosure of the mortgaged property. Maker argued Bank did not provide notice before bringing its action for acceleration and foreclosure. The note stated: "If default be made in the performance of ... this note ..., said principal sum with all accrued interest thereon shall become at once due and payable at the option of the holder *without further notice.*" *Id.* at 77, 325 S.E.2d at 530–31 (emphasis in original). The master and circuit judge held Maker's default entitled Bank to pursue acceleration and foreclosure without further notice to Maker. The Supreme Court upheld the trial courts' determinations, ruling the phrase "without further notice" permitted Bank's election to accelerate all payments without any notice to Maker. *Id.* at 80, 325 S.E.2d at 532.

In *Hendrix,* immediately upon Maker's default, Lender brought a foreclosure action. Maker averred it was entitled to "notice of acceleration." Unlike the note in *Allendale Furniture Company,* there was no language in the *Hendrix* note stating what may occur regarding notice upon Maker's default. Upon other grounds, the trial court ruled Lender forfeited her right of foreclosure. The Court of Appeals reversed and held Lender was permitted to bring suit. Citing *Goodwin v. Dawkins,* 282 S.C. 40, 317 S.E.2d 449 (1984), *Berry v. Caldwell,* 121 S.C. 418, 114 S.E. 405 (1922), and *Farmers' Bank & Trust Company v. Fudge,* 113 S.C. 25, 100 S.E. 628 (1919), the Court recited the rule that where acceleration clauses do not provide for acceleration "without notice" (*i.e.,* there is silence regarding the right to notice of default), initiation of a civil action constitutes adequate "notice of acceleration." *Id.* at 140, 355 S.E.2d at 274.

Though *Allendale* or *Hendrix* are edifying, the instant dispute does not fall within the ambit or aegis of either case. In both *Allendale* and *Hendrix*, the makers' rights regarding notice of default were certain, either through explicit statement or silence; however, in the case at bar, whether Middleton did or did not have the right to notice is unclear due to the injection of the word "may" in the "Notice of Default" provision.

At first blush, resolution of this dispute appears simple because a plethora of authorities state the word "may" signifies permission and means the action spoken of is optional or discretionary. *See Kennedy v. South Carolina Ret. Sys.,* 345 S.C. 339, 549 S.E.2d 243 (2001); *Rice v. Multimedia, Inc.,* 318 S.C. 95, 456 S.E.2d 381 (1995); *T.W. Morton Builders, Inc. v. von Buedingen,* 316 S.C. 388, 450 S.E.2d 87 (Ct.App. 1994). Applying this precedent, it would seem clear the language of the parties' agreement meant Southern Atlantic had no obligation to provide Middleton with written notice of default. Instead, notice by Southern Atlantic was optional. Acceleration of an installment note, however, is a harsh remedy. *First Bank Investors' Trust v. Tarkio College,* 129 F.3d 471 (8th Cir.1997). Because of the severity of the circumstances, a payee's right to accelerate should therefore be *clearly and unequivocally* articulated within the agreement. *Id.* In the instant case, we find the note did not "clearly and unequivocally" illustrate whether Middleton was entitled to notice of default and right to cure before South Atlantic could pursue acceleration and foreclosure.

The promissory agreement between Southern Atlantic and Middleton—like many thousands executed annually in South Carolina—was a contract of adhesion filled with boilerplate language made between a sophisticated lender and an unsophisticated maker. Examining the language of the note from the perspective of an ordinary maker—typically someone who is not well versed in interpreting the meaning and operation of technical language found within financial documents [1]—the

---

**1.** *See, e.g., State Farm Mut. Auto. Ins. Co. v. Moorer,* 330 S.C. 46, 58, 496 S.E.2d 875, 882 (Ct.App.1998) (supporting the proposition that contractual terms should be interpreted by the courts according to "the

existence of several circumstances calls into question the efficacy of the language in regard to notice of default and right to cure before Southern Atlantic proceeded with its lawsuit.

Courts in other jurisdictions have recognized a judicially imposed limitation on the enforcement of adhesion contracts or provisions therein when a contract or provision does not fall within the reasonable expectations of the weaker or "adhering" party. *See, e.g., Graham v. Scissor–Tail, Inc.,* 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165 (1981). In such a circumstance, the offending contract or provision is deemed unenforceable. *Id.*

Notice of default and right to cure are standard contractual rights found in many promissory agreements. Therefore, a reasonable expectation arguably exists in the minds of many, if not most, makers that they will be entitled to notice of default and right to cure should they become delinquent. This idea was augmented in the instant case by the appearance of the words "Notice of Default" written in bold type and followed by language—confused by the word "may"—that did not definitively advise Middleton whether Southern Atlantic would or would not provide notice of default and right to cure before seeking acceleration and foreclosure. Because of Southern Atlantic's lack of clarity and precision, we conclude that factual issues exist in reference to the intent of the parties.

██ We rule that an ambiguity was created by Southern Atlantic regarding the meaning and operation of the "Notice of Default" provision. It is well settled that ambiguities arising within a contract must be construed against the drafter. This rule applies with particular force in cases involving a contract of adhesion. *Graham,* 171 Cal.Rptr. 604, 623 P.2d at 172, n. 16 (citation omitted). Consequently, we find the master erred awarding judgment to South Atlantic following his conclusion the "Notice of Default" provision did not obligate Southern Atlantic to provide Middleton with notice before initiating its action.

---

ordinary and usual understanding of their significance to the ordinary or common man") (citation omitted).

## *CONCLUSION*

The promissory agreement between Southern Atlantic and Middleton did not "clearly and unequivocally" evince whether Southern Atlantic would give Middleton notice of default and right to cure before pursuing acceleration and foreclosure. This lack of clarity created ambiguity in the parties' agreement. Therefore, we hold the master erred in his determination that no ambiguity in the note existed and remand the case to the master for a new trial with instructions to permit the parties an opportunity to offer any relevant evidence illustrating their respective intent and understanding concerning whether Middleton had a right to notice of default and right to cure. *See Carolina Ceramics, Inc. v. Carolina Pipeline Co.,* 251 S.C. 151, 161 S.E.2d 179 (1968) (reversing determination of trial judge in a bench trial that contract term was unambiguous and remanding for new trial to allow the parties an opportunity to offer evidence demonstrating their intent).

**REVERSED AND REMANDED.**

CONNOR and HOWARD, JJ., concur.