573 S.E.2d 845

**Esau HEYWARD, Appellant,**

v.

**Samuel CHRISTMAS, Respondent.**

**No. 3562.**

Court of Appeals of South Carolina.

Heard Oct. 9, 2002.

Decided Nov. 4, 2002.

Rehearing Denied Dec. 19, 2002.

---

Dwight Christopher Moore, of Sumter; John D. Delgado and Kathrine H. Hudgins, both of Columbia, for appellant.

John E. James, III and George C. James, Jr., both of Sumter; for respondent.

ANDERSON, J.:

Esau Heyward brought a civil action against Samuel Christmas, a South Carolina Highway Patrol trooper, alleging causes of action for negligence, assault and battery, and violation of 42 U.S.C. § 1983 by using excessive force in arresting Heyward. The circuit court granted Christmas a directed verdict. Heyward appeals, arguing that (1) the circuit court erred in granting Christmas a directed verdict; and (2) the circuit court erred in finding Christmas was entitled to qualified immunity. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

On February 16, 1996, Heyward worked until 5:00 p.m., changed clothes, and then went to a bar called Scotty's Shop in Pinewood, South Carolina. Heyward drank a few beers and then asked Ronald Brunson to give him a ride home around 8:30 to 9:00 p.m. Brunson left Scotty's with Heyward, and sometime during the drive, shots were exchanged between Brunson and a Pinewood police officer. A high-speed chase ensued, and Christmas and Trooper Raffield, another highway patrol trooper, joined the chase. Brunson eventually stopped the car and surrendered to the police. Heyward remained in the car. With his gun drawn, Christmas instructed Heyward to get out of the car and raise his hands. Heyward did not comply. With his gun still drawn, Christmas went to the driver's side of the vehicle while the other two officers approached Heyward from the passenger side. From the driver's side door, Christmas reached over, grabbed Heyward, and dragged him from the car. As he was pulling Heyward from the vehicle, Christmas' drawn gun discharged and Heyward was shot in the right leg. The officers did not find a gun in Heyward's hands.

Heyward filed the underlying civil action against Christmas, alleging causes of action for negligence, assault and battery, and using excessive force in arresting Heyward in violation of 42 U.S.C. § 1983. Christmas moved for summary judgment on the negligence claim, and the circuit court granted it. Prior to trial, Heyward agreed to dismiss the assault and battery claim. The only issue to go to trial was whether Christmas had used excessive force in arresting Heyward in violation of § 1983.

The first witness for Heyward was Christmas. Christmas admitted the sirens from the three police cars would have made any audible instructions to Heyward difficult to hear. Christmas testified that Heyward's empty hands came up when Christmas grabbed for him. Christmas stated that Heyward did not resist, but his weight of 120 pounds caused Christmas to stumble while pulling Heyward out of the car. Christmas was wearing gloves at the time, and when Heyward's weight shifted, Christmas maintained that he regripped the gun and the gun discharged. Christmas kept his gun

drawn because his brand new holster had not been broken in, which made the holster stick and difficult to pull the gun out. Christmas acknowledged the normal procedure was for the officer to stay in a protective position while ordering occupants of a car to exit one at a time. Christmas affirmed that he did not intentionally shoot Heyward.

Heyward called Rick Johnson as an expert in the field of law enforcement. Johnson regarded Christmas' actions as unreasonable. Johnson contended that Christmas placed himself in jeopardy by approaching the vehicle immediately upon the stop before taking time to assess the situation. Johnson opined that Christmas placed the other officers' lives in jeopardy by approaching and entering the vehicle with his weapon drawn and by pulling Heyward across to the driver's seat with one hand when the other officers were standing outside the passenger door. According to Johnson, the more reasonable approach would have been to get in a protected position and use the police car's public announcement system to give verbal commands to the occupant of the car.

Heyward testified at trial regarding the shooting. According to Heyward, he paid Brunson five dollars to drive him home from the bar. As the two began traveling away from the bar, a police car pulled in behind them. Brunson began shooting at the police car, stating that the police were "messing with him." Heyward asked Brunson to let him out of the vehicle, but Brunson continued to drive. When the car eventually stopped, Heyward asserted there was a lot of noise coming from the police sirens. Heyward claimed that he sat with his hands in his lap, still buckled in his seatbelt, after the car stopped because he panicked. Heyward heard an officer yell for him to "hold it," and to hold his hands up. Heyward professed he cooperated by putting his hands up and then recalled being pulled out of the driver's side of the car. The next thing he heard was the gun discharging. Heyward said that he never had the chance to unlatch his seatbelt prior to being hauled from the car.

After Heyward's presentation of evidence, Christmas moved for a directed verdict. The circuit court reserved the ruling until all the evidence had been presented.

Terry Proctor testified that he was on duty at the sheriff's office and was patrolling the road on the evening of the shooting when he heard the radio call around midnight that shots had been fired upon a Pinewood police officer in pursuit of a car.

Captain David E. Florence attested that he was on duty at the Sumter County Sheriff's Office when he heard the radio call regarding the shots fired on the Pinewood police officer. Florence went to the area to try to intercept the suspect vehicle. Florence pulled his vehicle in front of the suspect vehicle and forced Brunson to stop. Florence established that he and several other officers yelled at the occupants to put their hands in the air and exit the car. Although Brunson, the driver, exited the vehicle, the passenger did not show his hands or comply with any commands. Florence approached the passenger side of the car, and Lieutenant Bradford opened the passenger door to try to get Heyward out of the car. At that moment, Christmas went inside the car and grabbed Heyward from the driver's side.

Lieutenant Anthony Bradford asserted that after the vehicle was stopped, he walked over to the passenger side.

Christmas averred that when he approached the vehicle, the driver's side door was left open from the driver's exit. He believed he had a better view of inside the car than anyone else and could see the suspect, Heyward, in the car.

Relying on *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and *Roy v. Inhabitants of City of Lewiston*, 42 F.3d 691 (1st. Cir.1994), the circuit court granted the motion for a directed verdict on the § 1983 action, finding no Fourth Amendment violation based on the objective reasonableness standard and on qualified immunity. The court found the gun discharged accidentally, and thus the court would not consider the gun at all. The court based its decision on whether the actual seizure was unreasonable. The court found that it was not unreasonable under the circumstances for Christmas to pull Heyward out of the car by dragging him across the driver's seat. The circuit court held that it would not consider Christmas' deviation from his training in the directed verdict motion. Heyward appeals.

## STANDARD OF REVIEW

When reviewing an order granting a directed verdict, the appellate court views the evidence and all reasonable inferences from the evidence in a light most favorable to the party against whom the directed verdict was granted. *Carson v. Adgar,* 326 S.C. 212, 216, 486 S.E.2d 3, 5 (1997); *Adams v. G.J. Creel and Sons, Inc.,* 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995). If the evidence is susceptible of more than one reasonable inference, a jury issue is created and "the court may not grant a directed verdict." *Hunley v. Gibson,* 313 S.C. 350, 351, 437 S.E.2d 554, 555 (Ct.App.1993).

## ISSUES

I. Did the circuit court err in granting a directed verdict to Christmas on the ground that his conduct was objectively reasonable?

II. Did the circuit court err in granting a directed verdict on the ground that Christmas was entitled to qualified immunity?

## LAW/ANALYSIS

### I. OBJECTIVELY REASONABLE STANDARD

Heyward first argues the circuit court erred in granting a directed verdict based on the finding that Christmas' actions were "objectively reasonable." We agree.

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. Congress enacted 42 U.S.C. § 1983 to allow citizens a private cause of action against state actors who deprive them of a constitutional right. Section 1983 provides:

> [Anyone] who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1996).

 Heyward argues he was entitled to redress under § 1983 because Christmas violated his Fourth Amendment rights by using unreasonable force in arresting him. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against [excessive force], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus, a claim that a police officer has used excessive force during a seizure of a person must be evaluated under the Fourth Amendment's objective reasonableness standard. *Graham*, 490 U.S. at 388, 109 S.Ct. 1865; *Threlkeld v. White Castle Systems, Inc.*, 201 F.Supp.2d 834, 840 (N.D.Ill.2002). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *accord Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.2001) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). Although the Fourth Amendment recognizes that police have the right to use some force in making an arrest, courts must look to the totality of the circumstances and determine whether the use of force was "reasonable" from the perspective of a reasonable officer in the same situation. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Jensen v. City of Oxnard*, 145 F.3d 1078, 1086 (9th Cir.1998); *Wicker v. City of Galveston*, 944 F.Supp. 553, 558 (S.D.Tex.1996). Factors to consider in determining reasonableness are "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

[T]he question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent

or motivation.... An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Id.* at 397, 109 S.Ct. 1865; *accord Jensen,* 145 F.3d at 1086; *Anderson v. Branen,* 17 F.3d 552, 559 (2nd Cir.1994).

■ Because the intent of the officer is irrelevant in the overall analysis of whether the officer's actions were "objectively reasonable," whether a gun discharges accidentally is of no consequence. A court must instead determine whether the use of the gun was objectively reasonable in light of the surrounding circumstances. *See Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (court must consider whether police officer's use of force was reasonable under the circumstances); *Brower v. County of Inyo,* 489 U.S. 593, 598–99, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (it is not practicable to conduct an inquiry into subjective intent; it is enough for a seizure that "a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result").

The circuit court in the underlying case relied heavily upon *Roy v. Inhabitants of City of Lewiston,* 42 F.3d 691 (1st Cir.1994). In *Roy,* two police officers watched as a third officer attempted to serve the intoxicated Roy with a summons outside his home. Roy refused the summons, became angry, entered his home, and returned outside with two steak knives, which he swung about while advancing upon the officers. After unsuccessfully attempting to get Roy to drop the knives, Roy lunged at an officer who shot Roy twice. The First Circuit Court of Appeals upheld the district court's grant of summary judgment to the officer, finding that "in our view a jury could not find that his conduct was so deficient that no reasonable officer could have made the same choice as [the officer] in circumstances that were assuredly 'tense, uncertain, and rapidly evolving....'" *Roy,* 42 F.3d at 695 (quoting *Graham,* 490 U.S. at 397, 109 S.Ct. 1865).

*Roy* is factually distinguishable from the present case. Whereas Roy was proceeding upon the officers while flailing about two steak knives, Christmas approached a motionless Heyward with his gun drawn from the driver's side of the vehicle. Although Heyward eventually raised his hands,

Christmas continued to point his weapon at Heyward. Despite the fact that other officers were attempting to remove Heyward from the passenger side of the car, Christmas grabbed Heyward, who was still wearing a seatbelt, with one hand and lugged him across the seat of the car while still pointing his firearm with the other hand. Christmas, as a result, was also pointing the firearm at the other officers.

Applying the *Graham* factors to the present case, the original crime of shooting at a police officer was serious and the officers were not initially sure which suspect in the car was the shooter. However, Heyward posed no immediate threat to the police officers when he was removed from the vehicle because he complied with the officers' requests to make his hands visible just prior to Christmas' seizure of him. Moreover, he was not actively resisting arrest or trying to flee.

Further, the circuit court erred by refusing to consider the other circumstances in determining whether Christmas' actions were objectively reasonable. The circuit court specifically refused to consider the use of the weapon in effectuating the seizure of Heyward because it found the resulting shot accidental. In addition, it does not appear the circuit court considered the other officers within the line of fire or Heyward's act of surrender by putting his hands up prior to Christmas' actions. An expert testified that Christmas' actions were not reasonable under the circumstances. Viewing the totality of the circumstances, there was some evidence that Christmas' actions could be considered objectively unreasonable. Thus, reviewing the evidence in this case in the light most favorable to Heyward, we find the evidence was capable of more than one interpretation and the circuit court erred in granting a directed verdict.

## II. QUALIFIED IMMUNITY

Heyward argues the circuit court erred in directing a verdict for Christmas on the grounds that he was entitled to qualified immunity. We agree.

While § 1983 provides individuals with a method of seeking monetary compensation against state actors who deprive them of a constitutional right, state actors are given some protection. Government officials "performing discre-

tionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); see also *Todd v. Smith,* 305 S.C. 227, 238, 407 S.E.2d 644, 650 (1991) (quoting *Harlow* ). "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered on a more specific level. . . ." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151 (citing *Wilson,* 526 U.S. at 615, 119 S.Ct. 1692).

The Fourth Circuit Court of Appeals has summarized this test as follows:

> Ruling on a defense of qualified immunity therefore requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right. The first two of these present pure questions of law for the courts. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The third, which involves application of *Harlow's* objective test to the particular conduct at issue, may require factual determinations respecting disputed aspects of that conduct. *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987).

*Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992).

At the end of the trial, the circuit court announced an inclination to grant Christmas a directed verdict based on "both the objective reasonable standards on the Fourth Amendment test and qualified immunity." However, throughout the directed verdict arguments with counsel, the circuit court only discussed the objective reasonable standard. The

circuit court did not discuss why, based on the facts presented, it found Christmas was entitled to qualified immunity. It does not appear from the record that the circuit court performed a qualified immunity evaluation.

Nevertheless, it appears that Heyward presented evidence that would create a question of fact regarding qualified immunity. Heyward was entitled under the Fourth Amendment to be free from seizures effectuated by the use of excessive force. This right was clearly established at the time Christmas approached the motionless Heyward with his gun drawn. Finally, some evidence was presented that a reasonable officer would not have approached Heyward in the manner that Christmas did. The expert testimony at trial at least created a question of fact regarding the reasonableness of Christmas' actions. Because the circuit court failed to make a reasoned evaluation of whether Christmas was entitled to qualified immunity and Heyward presented evidence which could lead to more than one inference regarding Christmas' entitlement to qualified immunity, the circuit court erred in granting Christmas a directed verdict based on qualified immunity.

## CONCLUSION

Based on the foregoing, the circuit court's grant of a directed verdict to Christmas is

**REVERSED AND THE CASE IS REMANDED FOR TRIAL.**

CONNOR and STILWELL, JJ., concur.