649 S.E.2d 494

**ECCLESIASTES PRODUCTION MINISTRIES, Appellant**

v.

**OUTPARCEL ASSOCIATES, LLC, Respondent.**

No. 4254.

Court of Appeals of South Carolina.

Submitted June 1, 2007.

Decided June 14, 2007.

Rehearing Denied Aug. 27, 2007.

486

S. Allan Hill, of Greenville, for Appellant.

Ralph Gleaton, of Greenville, for Respondent.

ANDERSON, J.:

Ecclesiastes Production Ministries ("EPM") appeals the grant of a directed verdict in regard to its third-party claims against Outparcel Associates, LLC ("Outparcel"). The trial judge granted Outparcel's motion based on a settlement agreement between EPM and JDL Holdings, LLC ("JDL") that he deemed to require Outparcel's release as well. We **REVERSE.**[1]

## *FACTUAL/PROCEDURAL BACKGROUND*

On July 18, 2001, EPM entered into an agreement with Outparcel for the lease of a building ("the Leased Property") in Greenville County. The lease contained a seven-page, handwritten addendum granting EPM the option to purchase the land and the right of first refusal.

On March 31, 2003, without EPM's knowledge, Outparcel entered into a bond for title agreement with JDL for the sale of a larger tract of land that included the Leased Property. JDL later filed suit against EPM to collect rent under the lease agreement between EPM and Outparcel.

EPM answered and brought Outparcel into the suit as a third-party defendant. EPM's pleadings asserted, *inter alia,* that Outparcel had failed to offer a right of first refusal to

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

EPM before entering into the bond for title agreement with JDL. Additionally, EPM counterclaimed against JDL for fraud and tortious interference with its contractual right of first refusal.

Shortly before trial, on February 2, 2005, EPM and JDL settled their claims and released one another with a document they termed a "Mutual Settlement and Release" ("the Settlement Agreement"). The Settlement Agreement between EPM and JDL was conditioned upon EPM continuing to pursue its claims for damages against Outparcel. Under certain circumstances, EPM was to share an award from Outparcel. The document detailed how any recovered damages were to be divided between EPM and JDL.

EPM's third-party complaint against Outparcel came to trial on February 6, 2005. At the conclusion of EPM's case, Outparcel moved for a directed verdict, arguing the Settlement Agreement had the effect of releasing EPM's claim against Outparcel. The trial court granted the motion.

### STANDARD OF REVIEW

In ruling on a motion for a directed verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. *Hurd v. Williamsburg County,* 363 S.C. 421, 611 S.E.2d 488 (2005); *Hinkle v. Nat'l Cas. Ins. Co.,* 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003); *Huffines Co. v. Lockhart,* 365 S.C. 178, 187, 617 S.E.2d 125, 129 (Ct.App.2005); *Lingard v. Carolina By–Products,* 361 S.C. 442, 446, 605 S.E.2d 545, 547 (Ct.App.2004). The trial court must deny such a motion when the evidence yields more than one inference or its inference is in doubt. *Steinke v. South Carolina Dep't of Labor, Licensing & Reg.,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999); *Collins Entertainment, Inc. v. White,* 363 S.C. 546, 611 S.E.2d 262 (Ct.App.2005); *Sims v. Giles,* 343 S.C. 708, 714, 541 S.E.2d 857, 860 (Ct.App. 2001). If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and the motion should be denied. *Jinks v. Richland County,* 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003); *Adams v. G.J. Creel &*

*Sons, Inc.,* 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995); *Huffines* at 187, 617 S.E.2d at 129.

■ A motion for directed verdict goes to the entire case and may be granted only when the evidence raises no issue for the jury as to. liability. *Carolina Home Builders, Inc. v. Armstrong Furnace Co.,* 259 S.C. 346, 358, 191 S.E.2d 774, 779 (1972). "When the evidence yields only one inference, a directed verdict in favor of the moving party is proper." *Swinton Creek Nursery v. Edisto Farm Credit, ACA,* 334 S.C. 469, 476–77, 514 S.E.2d 126, 130 (1999); *accord Sims,* at 714, 541 S.E.2d at 860; *R & G Constr., Inc. v. Lowcountry Reg'l. Transp. Auth.,* 343 S.C. 424, 540 S.E.2d 113 (Ct.App.2000). "The issue must be submitted to the jury whenever there is material evidence tending to establish the issue in the mind of a reasonable juror." *Small v. Pioneer Machinery, Inc.,* 329 S.C. 448, 461, 494 S.E.2d 835, 841 (Ct.App.1997). However, if the evidence taken as a whole is susceptible of more than one reasonable inference, the case must be submitted to the jury. *Quesinberry v. Rouppasong,* 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998); *Getsinger v. Midlands Orthopaedic Profit Sharing Plan,* 327 S.C. 424, 426, 489 S.E.2d 223, 223 (Ct.App.1997); *see also Heyward v. Christmas,* 352 S.C. 298, 573 S.E.2d 845 (Ct.App.2002) (if the evidence is susceptible of more than one reasonable inference, a jury issue is created and the court may not grant a directed verdict).

■ "When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Harvey v. Strickland,* 350 S.C. 303, 308, 566 S.E.2d 529, 532 (2002); *accord Pond Place Partners v. Poole,* 351 S.C. 1, 15, 567 S.E.2d 881, 888 (Ct.App.2002); *Boddie–Noell Props., Inc. v. 42 Magnolia P'ship,* 344 S.C. 474, 482, 544 S.E.2d 279, 283 (Ct.App.2000), aff'd as modified by 352 S.C. 437, 574 S.E.2d 726 (2002). "The issue must be submitted to the jury whenever there is material evidence tending to establish the issue in the mind of a reasonable juror." *Huffines,* at 188, 617 S.E.2d at 129–30 (*citing Hanahan v. Simpson,* 326 S.C. 140, 149, 485 S.E.2d 903, 908 (1997)). However, this rule does not authorize the submission to the jury of speculative, theoretical, or hypothetical views. *Small*

*v. Pioneer Mach., Inc.,* 329 S.C. 448, 461, 494 S.E.2d 835, 842 (Ct.App.1997). Our courts have recognized that when only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court to determine. *Bell v. Bank of Abbeville,* 211 S.C. 167, 173, 44 S.E.2d 328, 330 (1947); *Small,* 329 S.C. at 461, 494 S.E.2d at 841–42. "A corollary of this rule is that verdicts may not be permitted to rest upon surmise, conjecture or speculation." *Hanahan,* 326 S.C. at 149, 485 S.E.2d at 908; *Small,* 329 S.C. at 461, 494 S.E.2d at 841–42. This does not mean the trial court should ignore facts unfavorable to the opposing party. *Long v. Norris & Assocs., Ltd.,* 342 S.C. 561, 568, 538 S.E.2d 5, 9 (Ct.App.2000); *Love v. Gamble,* 316 S.C. 203, 208, 448 S.E.2d 876, 879 (Ct.App.1994). In deciding whether to grant or deny a directed verdict motion, the court is concerned only with the existence or nonexistence of evidence. *Pond Place Partners, Inc.,* 351 S.C. at 15, 567 S.E.2d at 888.

▆▆▆ An appellate court will reverse only where there is no evidence to support the trial judge's ruling, or where the ruling was controlled by an error of law. *Clark v. S.C. Dep't of Public Safety,* 362 S.C. 377, 382–83, 608 S.E.2d 573, 576 (2005); *Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999); *Abu–Shawareb v. S.C. State Univ.,* 364 S.C. 358, 613 S.E.2d 757 (Ct.App.2005); *Welch v. Epstein,* 342 S.C. 279, 300, 536 S.E.2d 408, 418 (Ct.App.2000). Essentially, this court must resolve whether it would be reasonably conceivable to have a verdict for a party opposing the motion under the facts as liberally construed in the opposing party's favor. *Harvey,* 350 S.C. at 309, 566 S.E.2d at 532; *Hanahan,* 326 S.C. at 149, 485 S.E.2d at 908.

### LAW/ANALYSIS

EPM argues the trial judge erred in granting Outparcel's motion for a directed verdict on the ground that the mutual release granted by EPM and JDL to one another had the effect of releasing Outparcel as well. EPM avers that viewing the facts in the light most favorable to the nonmoving party, the law of contract construction does not allow for finding that

the Settlement Agreement provides for Outparcel's release from EPM's third-party claim. We agree.

## A. The Extant Precedent

### 1. Settlement Agreements

The term "release" has been defined as the "relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists or to whom it accrues, to the person against whom it might have been demanded or enforced." 76 C.J.S. *Release* § 2 (1994). A release is an agreement providing that a duty owed to the maker of the release is discharged immediately. *Id.*; *see also Black's Law Dictionary* 1315–16 (6th ed. 1990) (a release is the act of giving up a right or claim to the person against whom it could have been enforced). Whether a particular agreement constitutes a release is to be determined from the intent of the parties. *Id.*

Under the common law, the release of one of multiple joint tortfeasors, unavoidably resulted in the release of all. *Bartholomew v. McCartha*, 255 S.C. 489, 179 S.E.2d 912 (1971). In response to the obvious quandaries caused by this rule, South Carolina jurisprudence adopted documents in lieu of a general release: (1) a covenant not to sue; and (2) a covenant not to execute. A covenant not to sue was recognized and approved in *Powers v. Temple*, 250 S.C. 149, 156 S.E.2d 759 (1967). A covenant not to execute received the imprimatur and approbation of our supreme court in *Poston by Poston v. Barnes*, 294 S.C. 261, 363 S.E.2d 888 (1987).

In *Ackerman v. Travelers Indemnity Co.*, 318 S.C. 137, 456 S.E.2d 408 (Ct.App.1995), this court discussed the genesis of the covenant not to sue:

At common law, a valid release of one joint tort-feasor was usually a release of all the joint wrongdoers and was a bar to a suit against any of them for the same wrong. At the base of this rule was the theory that there could be but one compensation for the joint wrong. If the injured party was paid by one of the wrongdoers for the injury he had suffered, each wrongdoer being responsible for the whole damage, his cause of action was satisfied in exchange for a release, and he could not proceed against the others. Thus a release of one joint wrongdoer released all. But when the

consideration received for the release was not full compensation for the injury, the purpose for the harsh rule did not exist. To allow for this, the covenant not to sue was developed.

*Ackerman,* 318 S.C. at 146–47, 456 S.E.2d at 413. Technically, in the case of a release, there is an immediate discharge; whereas, in the case of a covenant not to sue, there is merely an agreement not to prosecute a suit. 66 Am.Jur.2d *Release* § 2 (1973).

The differences between a covenant not to sue and a covenant not to execute were succinctly explained in *Poston:*

Other jurisdictions hold that a Covenant Not To Execute is not a satisfaction or a release and that its legal effect is similar to that of a Covenant Not To Sue because it does not operate to release other joint tortfeasors. A Covenant Not To Execute is a promise not to enforce a right of action or execute a judgment when one had such a right at the time of entering into the agreement. A Covenant Not to Sue and a Covenant Not to Execute are so closely akin that a major distinguishing factor is that the latter is normally executed when a settlement occurs after the filing of a lawsuit, while the former is entered into before a lawsuit is filed. In South Carolina when a Covenant Not To Sue has been entered into, usually the covenanting tortfeasor is no longer a party to the litigation.

We are cognizant that litigants are free to devise a settlement agreement in any manner that does not contravene public policy or the law. In fact, this Court encourages such compromise agreements because they avoid costly litigation and delay to an injured party. However, these settlement agreements must be carefully scrutinized in order to determine their efficiency and impact upon the integrity of the judicial process.

*Poston,* 294 S.C. at 263–64, 363 S.E.2d at 889–90 (citations omitted).

*Bartholomew v. McCartha* addressed the efficacy of a settlement agreement's release as to the liability of a third-party and manifestly replaced "the ancient common-law rule, that regardless of the intention of the parties, the release of one joint tort-feasor releases all." 255 S.C. 489, 491, 179 S.E.2d

912, 913 (1971) (quoting *Mickle v. Blackmon,* 252 S.C. 202, 224, 166 S.E.2d 173, 182 (1969)). In *Bartholomew* the plaintiff was involved in a car crash with two other vehicles. After the victim settled out of court with one of the two tortfeasor defendants, the remaining defendant claimed the other parties' agreement released him from liability as well. Declining to adopt the traditional common-law rule that the release of one joint tortfeasor discharged all others, the court held:

> Being untrammeled by the ancient rule which, in our view, tends to stifle settlements, defeat the intention of parties and extol technicality, we adopt the view that the release of one tort-feasor does not release others who wrongfully contributed to plaintiff's injuries unless this was the intention of the parties, or unless plaintiff has, in fact, received full compensation amounting to a satisfaction. It, therefore, becomes unnecessary for us to determine whether the instrument involved here is a release rather than a covenant.

*Bartholomew* at 492, 179 S.E.2d at 914.

Finding no merit to the appellants' contention that the circuit court erred in finding the plaintiff's release of another defendant did not, as a matter of law, operate to exonerate the appellants from liability, in *Scott by McClure v. Fruehauf Corp.,* 302 S.C. 364, 396 S.E.2d 354 (1990), the South Carolina Supreme Court enunciated:

> The release of one tortfeasor does not constitute a release of others who contributed to the plaintiff's injuries unless the parties intended such a release or the plaintiff received full satisfaction. *Bartholomew v. McCartha,* 255 S.C. 489, 179 S.E.2d 912 (1971). The release here evidences no intent to release others from liability and in fact contemplates further litigation against other tortfeasors to fully compensate [the plaintiff].

*Id.* at 368, 396 S.E.2d at 356.

In *Loyd's Inc. by Richardson Const. Co. of Columbia, S.C., Inc. v. Good,* 306 S.C. 450, 412 S.E.2d 441, (Ct.App.1991), a release was executed between a subcontractor and pond owner who had suffered siltation damage. The agreement provided full satisfaction of the pond owner's claims, and therefore had

the efficacy of releasing the general contractor and upstream property owner from liability as well. This court instructed:

> [B]efore the effective date of the [act creating a right of contribution of joint tortfeasors], the law was clear that the release of one tortfeasor served to release others who wrongfully contributed to the plaintiff's injuries only if the injured party and released party intended that result, or the injured party in fact received full compensation for his injuries amounting to a satisfaction. Following this reasoning, a covenant not to sue or a release which is not effective as a full release of all tortfeasors is a satisfaction "pro tanto" and reduces the amount of damages recoverable against the nonsettling tortfeasors by the amount of the consideration for the release.

*Id.* at 454, 412 S.E.2d at 444 (internal citations omitted).

After executing a release with other persons involved in their automobile accident, in *Bowers v. South Carolina Dept. of Trans.*, 360 S.C. 149, 600 S.E.2d 543 (Ct.App.2004), an injured motorist and her parents filed suit against the South Carolina Department of Transportation alleging its negligence in roadway maintenance contributed to the collision. Looking to the language of the release document, the Court of Appeals upheld the circuit court's award of summary judgment. The court based its determination on both prongs of *Bartholomew*, and concluded that, under the terms of the release, the parties received full compensation and intended that all claims for injuries would be relinquished:

> The terms of the Release do not evince an intent to limit its scope to any specifically identified parties. Rather, the Release is general and all encompassing in its scope. It clearly states that the Appellants released the tort-feasor "and all other persons, firms or corporations liable, or who might be claimed to be liable." This language is a clear, explicit, and unequivocal indication of the parties' intent that *all* claims arising from the accident-now and in the future-are barred under the terms of the Release. Had Appellants intended a contrary result and desired to limit the operation of the Release to named persons only, the terms of the Release could have been easily tailored to that end. We are constrained by the plain, unambiguous language of the

Release to find that Appellants' claims against SCDOT fall within the terms of the Release.

This result is also compelled under the second prong of *Bartholomew*. The Release clearly and unequivocally contemplates that the respective settlement payments to Appellants constituted a "full compensation amounting to a satisfaction."

Appellants, however, argue that "damages to be awarded for injury and resulting pain and suffering cannot be determined with mathematical precision" and this determination is, therefore, always "an issue of fact." They essentially argue that full compensation is always a function of the jury's discretion, rendering summary judgment unavailable. While we agree that damages, especially non-pecuniary damages, in a personal injury claim are difficult to ascertain in light of the broad discretion accorded the trier of fact, Appellants misconstrue the precise issue before us. The issue is not determining the exact amount (assuming liability) a jury would award. Instead, the issue is *"full compensation amounting to a satisfaction." Id.* at 491, 179 S.E.2d at 913 (emphasis added).

A "satisfaction" is generally defined as "[t]he discharge of an obligation by paying a party what is due to him" or "[t]he performance of a substituted obligation in return for the discharge of the original obligation." *Black's Law Dictionary* 1342 (6th ed. 1990). In cases involving a disputed or liquidated claim arising in contract or tort, the parties will reach an "accord" whereby one of the parties agrees to accept as "satisfaction" of the disputed claim some performance or undertaking different from that which he considers himself entitled. *See South Carolina Farm Bureau Mut. Ins. Co. v. Kelly,* 345 S.C. 232, 239, 547 S.E.2d 871, 875 (Ct.App.2001) (noting that "[a]n accord and satisfaction occurs when there is (1) an agreement to accept in discharge of an obligation something different from that which the creditor is claiming or is entitled to receive; and (2) payment of the consideration expressed in the new agreement.") (quoting *Tremont Constr. Co. v. Dunlap,* 310 S.C. 180, 182, 425 S.E.2d 792, 793 (Ct.App.1992); *Mercury Marine Div. v. Costas,* 288 S.C. 383, 386, 342 S.E.2d 632, 633 (Ct.App.1986)). Indeed, parties regularly reach compromise

settlements for a variety of reasons, including the vagaries and unpredictability of litigation and the desire for finality. Where, as here, a party accepts "a full and final compromise adjustment and settlement of any and all claims," such amounts to a *Bartholomew* satisfaction, thereby extending the preclusive effect of the release to nonparties to the instrument.

*Bowers v. Dept. of Transp.,* 360 S.C. 149, 154–55, 600 S.E.2d 543, 545–46 (Ct.App.2004) (emphasis in original).

## 2. Contract Interpretation

 A release is a contract and contract principles of law should be used to determine what the parties intended. *See Bowers v. Dept. of Transp.,* 360 S.C. 149, 153, 600 S.E.2d 543, 545 (Ct.App.2004) (stating "The Release is a contract" and applying South Carolina's rules of contract construction); *see also Lowery v. Callahan,* 210 S.C. 300, 300, 42 S.E.2d 457, 458 (1947) (noting that the "same principles of adequacy of consideration which apply to other contracts, govern as to releases"); *Hyman v. Ford Motor Co.,* 142 F.Supp.2d 735 (D.S.C.2001) (applying South Carolina contract law principles to determine validity of a release); 18 S.C. Jur. *Release* § 2 (2003) ("Because a release is a contract, principles of law applicable to contracts generally are also applicable to releases."); 76 C.J.S. *Release* § 2 (1994) (stating that a release is contractual in nature).

 "In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties." *Southern Atl. Fin. Servs., Inc. v. Middleton,* 349 S.C. 77, 80–81, 562 S.E.2d 482, 484–85 (Ct.App.2002); *accord D.A. Davis Constr. Co., Inc. v. Palmetto Props., Inc.,* 281 S.C. 415, 418, 315 S.E.2d 370, 372 (1984); *Williams v. Teran, Inc.,* 266 S.C. 55, 59, 221 S.E.2d 526, 528 (1976); *RentCo., a Div. of Fruehauf Corp. v. Tamway Corp.,* 283 S.C. 265, 267, 321 S.E.2d 199, 201 (Ct.App.1984). "Contracts should be liberally construed so as to give them effect and carry out the intention of the parties." *Mishoe v. Gen. Motors Acceptance Corp.,* 234 S.C. 182, 188, 107 S.E.2d 43, 47 (1958).

 The parties' intention must, in the first instance, be derived from the language of the contract. *Schulmeyer v.*

*State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003); *C.A.N. Enters., Inc. v. S.C. Health & Human Services Fin. Comm'n.*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988) ("In construing terms in contracts, this Court must first look at the language of the contract to determine the intentions of the parties."); *Jacobs v. Service Merch. Co.*, 297 S.C. 123, 375 S.E.2d 1 (Ct.App.1988). To discover the intention of a contract, the court must first look to its language-if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect. *Superior Auto. Ins. Co. v. Maners*, 261 S.C. 257, 263, 199 S.E.2d 719, 722 (1973). "Parties are governed by their outward expressions and the court is not at liberty to consider their secret intentions." *Blakeley v. Rabon*, 266 S.C. 68, 73, 221 S.E.2d 767, 769 (1976); *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 93–94, 594 S.E.2d 485, 493–94 (Ct.App.2004); *accord Kable v. Simmons*, 217 S.C. 161, 166, 60 S.E.2d 79, 81 (1950).

 The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof. *Thomas–McCain, Inc. v. Siter*, 268 S.C. 193, 197, 232 S.E.2d 728, 729 (1977); *see also Barnacle Broad., Inc. v. Baker Broad., Inc.*, 343 S.C. 140, 147, 538 S.E.2d 672, 675 (Ct.App.2000) ("The primary test as to the character of a contract is the intention of the parties, such intention to be gathered from the whole scope and effect of the language used."). "Documents will be interpreted so as to give effect to all of their provisions, if practical." *Reyhani v. Stone Creek Cove Condominium II Horizontal Property Regime*, 329 S.C. 206, 212, 494 S.E.2d 465, 468 (Ct.App.1997) (citing 17A Am. Jur.2d *Contracts* § 385 (1991)). In ascertaining intent, the court will strive to discover the situation of the parties, along with their purposes at the time the contract was entered. *Klutts Resort Realty, Inc. v. Down'Round Development Corp.*, 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977); *Bruce v. Blalock*, 241 S.C. 155, 161, 127 S.E.2d 439, 442 (1962); *Mattox v. Cassady*, 289 S.C. 57, 61, 344 S.E.2d 620, 622 (Ct.App.1986).

 In *Brady v. Brady*, 222 S.C. 242, 72 S.E.2d 193 (1952) the South Carolina Supreme Court asseverated:

It is fundamental that in the construction of the language of a [contract], it is proper to read together the different

provisions therein dealing with the same subject matter, and where possible, all the language used should be given a reasonable meaning.

Agreements should be liberally construed so as to give them effect and carry out the intention of the parties. In arriving at the intention of the parties to a lease, the subject matter, the surrounding circumstances, the situation of the parties, and the object in view and intended to be accomplished by the parties at the time, are to be regarded, and the lease construed as a whole. Different provisions dealing with the same subject matter are to be read together. *Id.* at 246–47, 72 S.E.2d at 195.

If a contract's language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and its language determines the instrument's force and effect. *Jordan v. Security Group, Inc.,* 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993); *Blakeley* at 72, 221 S.E.2d at 769. "Where an agreement is clear and capable of legal interpretation, the courts only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it." *Ellie* at 93, 594 S.E.2d at 493 (quoting *Heins v. Heins,* 344 S.C. 146, 158, 543 S.E.2d 224, 230 (Ct.App.2001)). However, where an agreement is ambiguous, the court should seek to determine the parties' intent. *Smith–Cooper v. Cooper,* 344 S.C. 289, 295, 543 S.E.2d 271, 274 (Ct.App.2001); *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship,* 331 S.C. 385, 390, 503 S.E.2d 184, 187 (Ct.App.1998).

"A contract is ambiguous when it is capable of more than one meaning or when its meaning is unclear." *Ellie* at 94, 594 S.E.2d at 493; *accord Bruce* at 160, 127 S.E.2d at 441; *Hawkins v. Greenwood Dev. Corp.,* 328 S.C. 585, 493 S.E.2d 875 (Ct.App.1997). "[A]n ambiguous contract is one capable of being understood in more senses than one, an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." *Carolina Ceramics, Inc. v. Carolina Pipeline Co.,* 251 S.C. 151, 155–56, 161 S.E.2d 179, 181 (1968) (citation omitted)

"Ambiguous language in a contract should be construed liberally and most strongly in favor of the party who did not write or prepare the contract and is not responsible for the ambiguity; and any ambiguity in a contract, doubt, or

uncertainty as to its meaning should be resolved against the party who prepared the contract or is responsible for the verbiage." *Myrtle Beach Lumber Co., Inc. v. Willoughby,* 276 S.C. 3, 8, 274 S.E.2d 423, 426 (1981) (quoting 17A C.J.S. *Contracts* § 324)

The court must enforce an unambiguous contract according to its terms, regardless of the contract's wisdom or folly, or the parties' failure to guard their rights carefully. *Ellis v. Taylor,* 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994); *Jordan v. Security Group, Inc.,* 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993).

Whether a contract's language is ambiguous is a question of law. *South Carolina Dep't of Natural Resources v. Town of McClellanville,* 345 S.C. 617, 550 S.E.2d 299 (2001); *Southern Atl. Fin. Servs., Inc. v. Middleton,* 349 S.C. 77, 80–81, 562 S.E.2d 482, 484–85 (Ct.App.2002), *aff'd as modified,* 356 S.C. 444, 590 S.E.2d 27 (2003). Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties. *Id.*; *see also Charles v. B & B Theatres, Inc.,* 234 S.C. 15, 18, 106 S.E.2d 455, 456 (1959) ("[W]hen the written contract is ambiguous in its terms, . . . parol and other extrinsic evidence will be admitted to determine the intent of the parties.") (citation omitted). The determination of the parties' intent is then a question of fact for the jury to determine. *South Carolina Dep't of Natural Resources,* 345 S.C. at 623, 550 S.E.2d at 303.

## B. The Case *Sub Judice*

In granting Outparcel's motion for a directed verdict, the trial judge stated:

I'm going to grant the motion for a directed verdict based on this mutual settlement and release that I marked as a Court's Exhibit. And just reading that there is no question that this lease and any causes of action that arise out of it, have been transferred to Mr. Ashy and his company, JDL Holdings. That while I don't condone the actions of Mr. Gleaton's client, they are in privity, in privity with Mr. Ashy and his company with respect to this agreement. And that all causes of action then existing or now existing at the time of the release arising hereafter, related to the events set forth in the lawsuit which could have been asserted in the

lawsuit or related to the business relationship among the parties were fully settled. So I'm granting the directed verdict.

Although the judge was somewhat enigmatical, it appears he based the directed verdict award on Outparcel's contention that the Settlement Agreement between EPM to JDL had the effect of releasing Outparcel from EPM's claim for breach of their contractual right of first refusal. This argument centered upon the following provision in the Settlement Agreement:

3. *Release by Danny Yopp d/b/a Ecclesiastes Ministries.* Danny Yopp d/b/a Ecclesiastes Ministries and its members, officers, directors, employees, heirs, successors and assigns, hereby release and forever discharge JDL Holdings, LLC, and any shareholders, officers, directors, employees, agents, servants, successors, and assigns, and any parent, subsidiary or affiliate thereof, and any other persons, firms, or corporations who are or may be liable, now or in the future, from any and all claims, demands, actions, or causes in action, whether in law or in equity, whether *ex contractu* or *ex delicto,* for damages of any kind, including compensation, loss of profits or income, expenses, consequential damages, punitive damages, costs, attorney's fees, expert witness fees, or any other damages, whether known or unknown, presently existing or which may arise in the future, arising out of, in connection with, or in any way related to the events set forth in the Lawsuit, or any other event, failures or breaches which are asserted or which could have been asserted in the Lawsuit.

Following South Carolina's rules of contract construction, the quoted language of the Settlement Agreement cannot possibly bear the meaning placed upon it by Outparcel and the circuit court. Executed only days before the trial between EPM and JDL was scheduled to begin, the first sentence of the Settlement/Release states: "This Mutual Release is ... by and between JDL Holdings, LLC, Plaintiff and Danny Yopp d/b/a Ecclesiastes Productions Ministries." Palpably, the Settlement Agreement was exclusively between EPM and JDL. Outparcel is not, and was not invited to be, a party to the Settlement Agreement. Despite Outparcel's urging to the contrary, the release of "any other persons, firms, or corporations who are or may be liable, now or in the future, from any

and all claims, demands, actions, or causes in action" can only reasonably be interpreted to include those persons and entities involved in the claims directly between EPM and JDL.

EPM and JDL mutually settled and released the other from what the Settlement Agreement captioned as, "the Lawsuit." While the meaning of the term "the Lawsuit" may refer to the entirety of the litigation, pellucidly EPM and JDL did not intend to include any claims against Outparcel in what was being settled, as the agreement discusses the continued pursuit of claims against Outparcel by both EPM and JDL. Unlike the general release in *Bowers,* the Settlement Agreement here clearly evinces an intent to limit its scope to the claims asserted by EPM and JDL against one another.

The Settlement Agreement is predicated upon the continuation of EPM's claims against Outparcel for fraud and contractual breach of the right of first refusal. The fifth paragraph of the Settlement Agreement reads:

5. *Payment by Danny Yopp d/b/a Ecclesiastes Ministries:* In consideration of the aforementioned covenants and promises Danny Yopp d/b/a **Ecclesiastes Ministries, agrees to pay JDL Holdings, LLC the following:**

A. One Hundred Thousand ($100,000.00) Dollars as settlement of JDL's claims for past due rents, attorney's fees, etc.

i. **Payment of the aforementioned $100,000.00 shall be due and payable if, and only if, Danny Yopp and/or Ecclesiastes Ministries are successful in obtaining a judgment against Outparcel Associates, LLC on the Cross Claims filed in said Lawsuit** for an amount in excess of $200,000.00 and is successful in collecting on the judgment as provided herein. **Danny Yopp agrees to vigorously pursue recovery of all of its damages as demanded in its complaint against Outparcel.** In the event Danny Yopp and/or Ecclesiastes Ministries are successful in obtaining a judgment against Outparcel Associates, LLC on the Cross Claims filed in said Lawsuit for an amount less than $200,000.00, no amount will be due JDL Holdings, LLC or Peter Ashy. If Danny Yopp is awarded a judgment in excess of two hundred thousand dollars ($200,000), the first one hundred thousand ($100,000) dollars received toward satisfaction of the judgment Danny Yopp may obtain against Outparcel will be free and clear of any claim by JDL

Holdings, LLC or Peter Ashy. Any amounts received to satisfy the judgment in excess of $100,000 dollars will be divided 20% in favor of JDL Holdings and 80% in favor of Danny Yopp up to a maximum of $100,000 dollars (less attorney fees as provided herein) being paid to JDL Holdings to satisfy the terms of this settlement agreement. The actual amounts due and payable will be directly contingent upon the judgment obtained by Danny Yopp, if any, and those monies received to satisfy said judgment, if any. The parties further agree their respective attorneys will execute an additional addendum to this agreement following the outcome of the February 9th trial, in which the attorney's [sic] will set forth in detail the actual judgment amounts and the ratio's [sic] and/or percentage each parties [sic] will be entitled to any collected monies. In the event Danny Yopp engages the services of an attorney to pursue collection of any judgment amount awarded, any reasonable contingency fees and costs charged by the attorney will be applied to any amounts received before applying the distribution percentages shown above. Payment will be due within fifteen (15) days of Danny Yopp and/or Ecclesiastes Production Ministries receiving cash or other funds as satisfaction of the judgment it anticipates obtaining on claims filed in this Lawsuit.

. . . .

iv. The parties also recognize that *JDL Holdings, LLC is in the process of filing a claim against Outparcel Associates, LLC* and Solomon Bekele for breach of contract, conversion and other related claims. The parties agree that any judgment obtained by JDL Holdings, LLC against Outparcel in the subsequent suit will be subordinate to the first one hundred thousand dollars of the escrowed funds generated by the sale of the disputed property and being held by North Georgia Title, Inc., the Qualified Intermediary, or any real estate purchased with those funds, which may be available to satisfy both judgments. This provision in no manner limits, restricts or otherwise subordinates JDL Holdings, LLC ability to collect any judgment it may obtain against Solomon Bekele individually.

(Emphasis added).

JDL's recovery from EPM is entirely dependent on EPM successfully recovering in its suit with Outparcel. Key provi-

sions of the agreement contemplate successful litigation against Outparcel, not its release. EPM's settlement payment to JDL is conditioned upon EPM's continued pursuit of its claims against Outparcel: "Payment ... shall be due and payable if, and only if Danny Yopp and/or [EPM] are successful in obtaining a judgment against Outparcel...." EPM agrees to "vigorously pursue recovery of all of its damages as demanded in its complaint against Outparcel." Furthermore, the agreement discusses a lawsuit JDL has filed against Outparcel. In order for this section to be efficaciousness and have any purpose whatsoever, indubitably the Settlement Agreement must be interpreted as effecting solely the suit between EPM and JDL. An interpretation otherwise would render this section absurd and nugatory.

## CONCLUSION

Based on the foregoing, the circuit court's grant of a directed verdict is

**REVERSED.**

HUFF and BEATTY, JJ., concur.