631 S.E.2d 913

COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY, Respondent,

v.

AIRBORNE EXPRESS, INC., Moore Express, Inc., and Charles Carpenter, as personal representative of the estate of Jessica Lynne Carpenter, Defendants,

Of whom Airborne Express, Inc. and Charles Carpenter, as personal representative of the estate of Jessica Lynne Carpenter, are the Appellants.

No. 4124.

Court of Appeals of South Carolina.

Heard May 9, 2006.

Decided June 19, 2006.

Robin A. Braithwaite, of Aiken, and Jonathan M. Aldeman, of Atlanta, GA, for Appellant Airborne Express;

Ronald A. Maxwell, of Aiken, and James L. Ford, Sr., of Atlanta, GA, for Appellant Charles Carpenter.

Karl Stephen Brehmer, of Columbia, and Marvin D. Dikeman and Melissa C. Patton, both of Atlanta, GA, for Respondent.

STILWELL, J.

Airborne Express, Inc. and Charles Carpenter appeal the trial court's grant of summary judgment in favor of Companion Property and Casualty Insurance Company in this declaratory judgment action. We affirm.

This case arises from the tragic sexual assault and murder of Carpenter's daughter, seventeen-year-old Jessica Carpenter. Robert Franklin Atkins was employed by Moore Express, Inc., a package delivery sub-contractor for Airborne. In late July of 2000, Atkins, a convicted felon, delivered a package to the Carpenter home. He returned to the home on August 4th dressed in his Airborne uniform and driving an Airborne delivery vehicle, gained entry to the premises, and attacked Jessica.

Carpenter, in his capacity as Jessica's personal representative, filed a wrongful death and survival action against Airborne, Moore, and Atkins. Moore was insured by Companion under a commercial general liability policy.[1] Airborne was named as an additional insured. Companion filed a declaratory judgment action contending that under the terms of the policy it was not required to defend Airborne or Moore because Jessica's murder was not an "occurrence" as contemplated by the terms of the policy, and, further, fell within the intentional acts exclusion of the policy. The trial court agreed and granted summary judgment in Companion's favor. Airborne and Carpenter appeal.

## STANDARD OF REVIEW

■ In reviewing a motion for summary judgment, the appellate court applies the same standard of review as the trial court under Rule 56(c), SCRCP. *Cowburn v. Leventis,* 360 S.C. 20, 30, 619 S.E.2d 437, 443 (Ct.App.2005) (citing *Trousdell v. Cannon,* 351 S.C. 636, 639, 572 S.E.2d 264, 265 (2002)). Summary judgment should be affirmed if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* "Our standard of review in evaluating a motion for summary judgment is to liberally

---

1. Moore also had a commercial automobile policy through Companion, and both Moore and Airborne sought coverage under that policy as well. Coverage under that policy is not an issue in this appeal.

construe the record in favor of the nonmoving party and give the nonmoving party the benefit of all favorable inferences that might reasonably be drawn therefrom." *Estes v. Roper Temp. Servs., Inc.,* 304 S.C. 120, 121, 403 S.E.2d 157, 158 (Ct.App.1991).

## LAW/ANALYSIS

Airborne appeals the trial court's determination that Carpenter's complaint failed to allege an "occurrence" within the contemplation of the terms of the policy and that the intentional acts exclusion of the policy precludes coverage.[2] Carpenter contends the court improperly applied the summary judgment standard by finding inferences in favor of the moving party, Companion.

■■ As a preliminary matter, we must determine which state's law applies. In construing insurance policies, South Carolina courts apply the law of the state where the policy was issued. *Gordon v. Colonial Ins. Co. of California,* 342 S.C. 152, 155–56, 536 S.E.2d 376, 378 (2000). Moore is a Georgia corporation, and the policy was issued and delivered to Moore in Georgia. Consequently, Georgia law governs our application and interpretation of the policy. All parties agree the application of Georgia law is appropriate.

■ An insurer's duty to defend is determined by examining the allegations contained in the complaint and comparing them to the coverage provided by the policy. *Batson–Cooke Co. v. Aetna Ins. Co.,* 200 Ga.App. 571, 409 S.E.2d 41, 42–43 (Ga.App.1991). In the instant case, the underlying complaint states claims for wrongful death and survival. In stating his claims, Carpenter alleges that Airborne and Moore were negligent in failing to conduct a background investigation of Atkins prior to hiring him, in failing to warn customers that delivery persons had not been subject to background checks, in failing to conduct periodic background checks once employees were hired, and in inducing customers to believe that

---

**2.** Airborne and Carpenter also contend that the cases relied upon by Companion are factually distinct from this case. As that question is essentially part and parcel of the central issue on appeal, we do not address it separately.

delivery persons are agents and representatives of Airborne, all resulting in Atkins' assault of Jessica.

The initial allegation, that Airborne and Moore were negligent in Atkins' assault of Jessica, appears to rest solely on the theory of vicarious liability; i.e., the employee's conduct is imputed to his employer. The remaining allegations, however, seem to assert separate negligent acts or omissions on the part of Airborne and Moore that contributed to Jessica's assault and death. Having preliminarily examined the allegations in the complaint, we must now compare those allegations with the coverage provided by the relevant provisions in the policy.

■ Moore's CGL policy provides the following:

This insurance applies to "bodily injury" or "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory[.]"

Occurrence is defined in the policy as *"an accident,* including continuous or repeated exposure to substantially the same general harmful conditions." Airborne argues that whether Jessica's murder was an "accident" must be viewed not from Atkins' standpoint, but from the standpoint of Airborne and Moore under the Georgia case of *Crook v. Georgia Farm Bureau Mut. Ins. Co.,* 207 Ga.App. 614, 428 S.E.2d 802 (Ga.App.1993). In *Crook,* the son of the plaintiffs in the underlying suit committed an intentional act that resulted in his death. *Id.* at 802–03. The parents sued Crook, who was characterized as an innocent bystander, apparently on the theory that he should have intervened to prevent the son from suffering the fatal consequence of his own voluntary act. *Id.* Crook was insured under a homeowner's policy issued by Georgia Farm Bureau, which defended under a reservation of rights and brought a declaratory judgment action asserting it owed no duty to defend because the son's death was the result of an intentional act on his part. *Id.* at 803. The son's death was therefore not an "occurrence" as defined by the policy terms. *Id.* The Georgia Court of Appeals determined that although the son's intentional act caused his own death, as to Crook, who was the insured and apparently took no active role

in the occurrence that caused the son's death, the event was "clearly an 'accident,' because it was an unintentional event which took place without [Crook's] 'foresight or expectation or design.' " *Id.* The court insinuated that the underlying tort action could be considered "groundless," but that had no bearing on the decision whether Farm Bureau owed Crook the duty of providing him a defense. *Id.*

Even if *Crook* supports the notion that an intentional act committed by one party may be considered an accident as to an insured in certain circumstances, it does not support Airborne's main contention. In *Crook,* the intentional act causing the ultimate event complained of was committed by a total stranger to the policy, and such act was not attributable, either vicariously or otherwise, to the insured. To interpret *Crook* to mean that the intentional acts of Atkins are completely severable from Moore and Airborne would require us to disregard other more recent, and more on point, precedents.

Subsequent Georgia case law appears to support the conclusion urged upon us by Companion that, because Atkins' acts were clearly intentional, the claims by Carpenter are not covered.[3] *O'Dell v. St. Paul Fire & Marine Ins. Co.,* 223 Ga.App. 578, 478 S.E.2d 418 (Ga.App.1996), is a coverage case that arose as a result of an employee's suit against the employer, O'Dell, and his two companies, DRACS Consulting Group, Inc. (DRACS) and Direct Recruiting Associates (DRA), for sexual harassment and assault and battery. *Id.* at 419. The court determined that the sexual harassment claims did not constitute "bodily injury" as required by the policy, and the assault and battery did not constitute an event under the policy as such acts were clearly intentional and not accidental. *Id.* at 420. Most significantly, the court went on to address potential negligence claims against DRACS and DRA

---

3. The policy at issue also contains a "separation of insureds" clause that indicates each insured will be treated severally under the policy. Had this issue been sufficiently preserved by having been raised to and ruled upon by the trial court, this case would potentially require a different analysis. *See State v. Dunbar,* 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) (holding that an issue must be raised to and ruled upon by the trial court to be preserved for appellate review).

arising from the underlying assault and battery and sexual harassment claims.

O'Dell also claims that St. Paul must defend the lawsuit on behalf of DRACS and DRA because [plaintiff] alleged facts on which a cause of action for negligent retention of O'Dell could be based. We note initially that the policy does not recite that it covers losses due to negligent retention. But even if this were true, the complaint does not allege that [plaintiff] suffered bodily injuries, and even assuming she *did* suffer bodily injuries, she did not allege that those injuries were caused by an accident and thus were brought about by an "event."

*Id.* (emphasis in original).

We find the factual scenario in *O'Dell* so similar to those in the instant case that we consider the holding therein to be controlling here. In *O'Dell,* the plaintiff alleged an intentional tort, sexual harassment, and brought a claim of negligent retention against DRACS and DRA. The Georgia Court of Appeals concluded that the negligent retention claim specifically was not a covered "event" under the CGL policy because the plaintiff did not allege her injuries were caused by an accident.

In this case, the plaintiff has alleged intentional acts, assault and murder, and has asserted a negligence claim against Moore and Airborne. We are compelled to conclude, as did the court in *O'Dell,* that the negligence claims against Airborne do not constitute an "occurrence," as Carpenter does not allege Jessica's injuries were caused by an accident. As a result, the claims against Airborne are not covered under the policy.

The decision of the Eleventh Circuit in *SCI Liquidating Corp. v. Hartford Fire Ins. Co.,* 181 F.3d 1210 (1999), supports our interpretation of *O'Dell* by stating, "[t]he Georgia Court [in *O'Dell* ] concluded that the plaintiff's negligent retention claims also were not covered, because, among other things, the plaintiff 'did not allege that those injuries were caused by an accident and thus were brought about by an 'event.' " *Id.* at 1216. The court in *SCI Liquidating* also declined to rely on *Crook* recognizing, as we do, a distinction between *Crook* and cases like the one before us. *See id.* at 1216–17.

Because we conclude Carpenter's complaint does not allege an occurrence under the policy, thereby negating Companion's obligation to defend, we decline to address whether the policy's intentional act exclusion is applicable. *See* Rule 220(c), SCACR; *Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 498, 613, 518 S.E.2d 591, 598 (1999) ("[A]n appellate court need not address remaining issues when disposition of prior issue is dispositive.").

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.