# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The Gulfstream Café, Inc., Appellant,

v.

Palmetto Industrial Development, LLC, Respondent.

Appellate Case No. 2019-000885

———————

Appeal from Georgetown County
Benjamin H. Culbertson, Circuit Court Judge

———————

Opinion No. 5935
Heard March 16, 2022 – Filed August 10, 2022

———————

**AFFIRMED**

———————

Robert P. Wood and Sean Matthew Foerster, both of
Rogers Townsend LLC, of Columbia; and Simon H.
Bloom, Adam D. Nugent, and Andrea J. Pearson, all of
Atlanta, Georgia, for Appellant.

Henrietta U. Golding, of Burr & Forman LLP, of Myrtle
Beach, for Respondent.

———————

**LOCKEMY, A.J.:** The Gulfstream Café, Inc. (Gulfstream) appeals the circuit
court's order granting summary judgment in favor of Palmetto Industrial
Development, LLC (Palmetto) on Gulfstream's request for attorneys' fees based on
a warranty provision in its easements. On appeal, Gulfstream argues the circuit
court erred in denying it attorneys' fees. We affirm.

**FACTS/PROCEDURAL HISTORY**

Gulfstream and Palmetto are neighbors in Murrells Inlet with a relationship that is tenuous at best. Gulfstream is a restaurant that is part of the Marlin Quay Marina Development. Next door to Gulfstream, Palmetto owns a marina, a store, a parking lot, and a property where a restaurant was previously located. J. Mark Lawhon (Mark) owns Palmetto.

In 1986 and 1990, Marlin Quay Marina Corporation, Palmetto's predecessor, granted Gulfstream four joint, non-exclusive easements. The 1990 easement specifically gave Gulfstream:

> A non-exclusive perpetual easement appurtenant to the premises of [Gulfstream] hereinafter described for the full and free right of ingress and egress on, over and across the following described property of [Marlin Quay Marina Corporation], together with the rights of vehicular parking on and vehicular and pedestrian access to, all in accordance with all governmental rules, regulations, ordinances or laws, the premises of the [Marlin Quay Marina Corporation] hereinafter described, and also for the purpose of maintenance, repair, alteration and/or improvements to [Gulfstream's] hereinafter described property. It is anticipated by the parties that while they will each have joint and non-exclusive use at all times of the area covered by this easement that the [Marlin Quay Marina Corporation] will utilize the premises primarily during the daytime regular business hours of [Marlin Quay Marina Corporation] and [Gulfstream] will utilize the premises primarily in the evening regular business hours of [Gulfstream.]

Gulfstream and Palmetto's relationship began to sour in 2016 when Palmetto demolished and started to rebuild its building. In that same year, Gulfstream sued Palmetto and Mark for interfering with its easement and received a temporary injunction which restrained Palmetto from interfering with Gulfstream's easement rights. Palmetto was subsequently held in criminal contempt for willfully violating the injunction.

On February 23, 2018, Gulfstream filed a complaint against Palmetto, seeking (1) a declaratory judgment requiring Palmetto to defend Gulfstream in Gulfstream's trial

against Palmetto based on Palmetto's interference with the easements and (2) a finding that Palmetto breached its warranty to Gulfstream. Gulfstream also levied allegations regarding Palmetto's conduct, including the demolition and construction of Palmetto's building, incidents regarding window washers, and other various hostilities between the parties. Later that year, the circuit court conducted a trial in the 2016 action, and a jury found for Gulfstream on its claim of interference with the easement against Palmetto.

Gulfstream's February 23, 2018 complaint also included the properties' recorded easements and plats, and all of the easements included a general warranty provision. In the 1990 easement, Palmetto's predecessor specifically warranted:

> [T]he said Marlin Quay Marina Corporation does hereby bind itself and its successors and assigns, to warrant and forever defend, all and singular, the said easement unto the said The Gulfstream Café, its successors and assigns, against itself and its successors and assigns and all others whomsoever lawfully claiming, or to claim the same or any part thereof.[1]

Gulfstream further attached a letter that it sent to Palmetto and Mark, demanding Palmetto provide a defense for, and indemnification of, Gulfstream. Gulfstream requested the circuit court to award "attorneys' fees and costs for the prosecution of this action as well as those attorneys' fees and costs incurred in other actions and venues to defend its rights as necessitated by and due to Palmetto's breaches thereof."

Gulfstream moved for summary judgment, arguing the plain language of the warranties provided for Palmetto's obligation to defend Gulfstream and Palmetto breached its obligations. Gulfstream included an affidavit of Edward Cribb, Jr., the president of Gulfstream from 1986 to 1996, who stated he would not have

---

[1] This language is consistent with the language for a general warranty as set forth in section 27-7-10 of the South Carolina Code (2007). *See generally Martin v. Floyd*, 282 S.C. 47, 51, 317 S.E.2d 133, 136 (Ct. App. 1984) ("A South Carolina general warranty deed embraces all of the following five covenants usually inserted in fee simple conveyances by English conveyors: (1) that the seller is seized in fee; (2) that he has a right to convey; (3) that the purchaser, his heirs and assigns, shall quietly enjoy the land; (4) that the land is free from all encumbrances; and (5) for further assurances.").

signed the 1986 and 1990 easements without the warranties and he and the grantor intended for the grantor to pay "for Gulfstream's attorney's fees and costs incurred in defending or bringing litigation to protect Gulfstream's use of the [p]arking [l]ot or its easement rights if those rights were challenged by anyone, including the [g]rantor."

Palmetto also moved for summary judgment and opposed Gulfstream's summary judgment motion. Relying upon the plain language of the warranty provisions and *Black v. Patel*,[2] Palmetto asserted it did not have a duty to indemnify Gulfstream. Palmetto further argued that under *Black*, "Gulfstream would be entitled to recover under the warranty provisions only if a court determined that it in fact did not have an easement and that the grant from Marlin Quay Marina Corporation was ineffective in some manner." Additionally, Palmetto contended Cribb's affidavit was insufficient because Cribb did not provide any information about how he knew what the grantor intended.

Gulfstream responded to Palmetto's motion for summary judgment, reasserting its prior arguments and alleging that *Black* recognized an exception to the general rule involving successful claims against the grantee: when "the grantor's own wrongful act gives rise to the litigation, then the grantor's obligation to defend is not limited to successful claims." Moreover, Gulfstream asserted there was a "critical" distinction between a regular warranty deed and an easement because for a normal title transfer, the "grantor has no future rights or relationship with the grantee," but for an easement, there is "an ongoing relationship."

The circuit court heard arguments on the summary judgment motions. On May 6, 2019, the circuit court filed a formal order, finding *Black* governed this case and thus, "Palmetto [wa]s not required to warrant and defend the easement from the claims made in the prior litigation between Gulfstream and Palmetto." This appeal followed.

**ISSUE ON APPEAL**

Did the circuit court err in denying Gulfstream attorneys' fees?

**STANDARD OF REVIEW**

"In reviewing a motion for summary judgment, the appellate court applies the same standard of review as the trial court under Rule 56(c), SCRCP." *Companion Prop.*

---

[2] 357 S.C. 466, 594 S.E.2d 162 (2004).

*& Cas. Ins. Co. v. Airborne Exp., Inc.*, 369 S.C. 388, 390, 631 S.E.2d 915, 916 (Ct. App. 2006). "Summary judgment should be affirmed if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* The nonmoving party "is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). "When a circuit court grants summary judgment on a question of law, [an appellate court] will review the ruling de novo." *Wright v. PRG Real Estate Mgmt., Inc.*, 426 S.C. 202, 212, 826 S.E.2d 285, 290 (2019).

## LAW/ANALYSIS

Gulfstream argues the circuit court erred in granting summary judgment on its attorneys' fee request because *Black* permits a grantee to obtain attorneys' fees when the grantor "wrongfully [seeks] to repudiate [an] easement." In reply to Palmetto's arguments, Gulfstream contends (1) Gulfstream successfully challenged Palmetto's "claim against the easement[s]," (2) Palmetto's conduct challenged Gulfstream's rights and was "equivalent to a claim to title," (3) there would be inequities if this court affirmed, and (4) this court should not rely on alternate sustaining grounds—Gulfstream's failure to timely invoke its rights under the warranties and Cribb's affidavit was not competent evidence—because the circuit court refused to rule on these issues. We disagree.

"In South Carolina, the authority to award attorney's fees can come only from a statute or be provided for in the language of a contract. There is no common law right to recover attorney's fees." *Harris-Jenkins v. Nissan Car Mart, Inc.*, 348 S.C. 171, 176, 557 S.E.2d 708, 710 (Ct. App. 2001); *see also Black*, 357 S.C. at 471, 594 S.E.2d at 164 ("[A]ttorneys' fees are not recoverable unless authorized by contract or statute.").

"The purpose of a general warranty deed is to indemnify the purchaser against the loss or injury it may sustain by a failure or defect in the vendor's title; the grantor warrants that it will restore the purchase price to the grantee if the land is entirely lost." 21 C.J.S. *Covenants* § 22 (2022); *see also* 20 Am. Jur. 2d *Covenants, Conditions, & Restrictions* § 58 (2022) ("[A] warranty of title is a contract on the part of the grantor to pay damages in the event of a failure of title."). "Generally, reasonable attorney's fees expended by a covenantee in good faith in defending title are recoverable by the covenantee in an action on the covenant." 21 C.J.S. *Covenants* § 84. "When a grantor refuses to defend title, after covenanting to defend title thereto against all lawful claims, the grantee must be allowed to recover attorney's fees in defending title." *Id.* "As a general rule, however, where

a covenantee successfully defends title, the covenantee is not entitled to attorney's fees from the covenantor under a warranty deed." *Id.* The exception to this rule is "where the wrongful act of the covenantor in a warranty deed causes the covenantee to be in litigation with a third party, then the covenantor is liable for costs despite the fact that the covenantee prevailed." 21 C.J.S. *Covenants* § 83 (citing only *Black*).

In *Black*, our supreme court considered whether a grantee should be entitled to attorneys' fees from a grantor when the grantee defended its title against a third party. 357 S.C. at 469, 594 S.E.2d at 163. Specifically, Jagdish and Usha Patel (the Patels) purchased property from Dr. Abraham Karrottukunnel (Grantor), and the deed included a general warranty provision that provided for a duty to defend. *Id.* at 468, 594 S.E.2d at 163. The Patels built a motel on the property, and the heirs of a neighboring landowner (Plaintiffs) subsequently brought suit, claiming the Patels' motel was encroaching on their land. *Id.* The Patels informed Grantor of the suit and requested he defend them. *Id.* Grantor did not respond, and the Patels answered Plaintiffs' complaint, brought a third-party complaint against Grantor, and requested costs, expenses, and attorneys' fees. *Id.* at 468-69, 594 S.E.2d at 163. Grantor then participated at trial but did not take over the Patels' defense. *Id.* at 469, 594 S.E.2d at 163. The Patels successfully defended title, and the Master-in-Equity awarded the Patels costs against Grantor but not attorneys' fees. *Id.*

Our supreme court explained: "The general rule for cases in this context is that only 'lawful'—that is, successful—claims asserted against title justify an award of attorneys' fees where the covenantor has failed to defend." *Id.* at 471, 594 S.E.2d at 164. However, in footnote 4 of the opinion, our supreme court noted that, "There are exceptions to this rule, for example, where it is the wrongful act of the covenantor which causes the covenantee to be in litigation with the third party, then the covenantor would be liable for costs despite the fact that the covenantee prevailed." *Id.* at 471 n.4, 594 S.E.2d at 165 n.4.

In reviewing this general rule, our supreme court found the rule made "logical sense":

> First, the covenantor has not conveyed bad title in any way, so it seems unfair to shift the burden of the costs of defense to him. Moreover, if the covenantor decides against taking over a defense of title after being notified of litigation, that is his risk to bear because if title is **unsuccessfully** defended by the covenantee, then the

covenantor would be liable for breach of the general warranty deed.

Second, and more importantly, the language in the general warranty deed itself (which is based upon state statute) compels application of this rule. The general warranty deed specifically states that the duty to defend goes to defending only against those people "**lawfully** claiming" the land. The court in *Outcalt* held that "in the context of the covenant of warranty, a 'lawful claim' necessarily means a successful claim." [*Outcalt v. Wardlaw*, 750 N.E.2d 859, 864 (Ind. Ct. App. 2001)]. We agree that in this context, the language that a claim to title must be "lawful" in order to trigger the duty to defend indicates that the duty extends only to claims which are ultimately successful. *Cf. Murchie v. Hinton*, 41 Ark. App. 84, 848 S.W.2d 436 (1993) (where the court allowed appellant attorneys' fees after successfully defending her title since the covenant to warrant and defend **specifically** stated that "**all** claims whatever" would be defended). In other words, a covenant of warranty simply "does not protect against every **unfounded** adverse claim." 20 Am. Jur. 2d *Covenants* § 139 [(1995)] (emphasis added).

*Id.* at 472, 594 S.E.2d at 165. Thus, our supreme court found the Patels were correctly denied attorneys' fees because "title was **successfully** defended against [P]lantiffs' claims." *Id.*

Accordingly, we hold the circuit court did not err in granting summary judgment in favor of Palmetto. *See Companion Prop. & Cas. Ins. Co.*, 369 S.C. at 390, 631 S.E.2d at 916 ("Summary judgment should be affirmed if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."); *Wright*, 426 S.C. at 212, 826 S.E.2d at 290 ("When a circuit court grants summary judgment on a question of law, [an appellate court] will review the ruling de novo.").

Here, the question before us is whether the warranty provisions in Gulfstream's easements provide that Gulfstream is entitled to attorneys' fees from Palmetto. We

hold the answer is "no" because Gulfstream's "title"[3] is not in issue. Palmetto has not disputed that Gulfstream has easements over Palmetto's property; rather, Palmetto, at worst, has been infringing upon Gulfstream's rights. Moreover, the jury found in favor of Gulfstream at the 2018 trial. Thus, pursuant to *Black's* general rule, Gulfstream is not entitled to attorneys' fees. *See Black*, 357 S.C. at 471, 594 S.E.2d at 164 ("The general rule for cases in this context is that only *'lawful'*—that is, successful—claims asserted against title justify an award of attorneys' fees where the covenantor has failed to defend." (emphasis added)); *Nunes v. Meadowbrook Dev. Co.*, 24 A.3d 539, 540-44 (R.I. 2011) (affirming the denial of attorneys' fees when the grantor initially intended to leave itself an easement to the property, the deed omitted the easement, the grantor later started trying to use the easement, and the grantee successfully defended title to the property and excluded the easement); 21 C.J.S. *Covenants* § 22 ("The purpose of a general warranty deed is to indemnify the purchaser against the loss or injury it may sustain by a failure or defect in the vendor's title . . . ."); 20 Am. Jur. 2d *Covenants, Conditions, & Restrictions* § 58 ("[A] warranty of title is a contract on the part of the grantor to pay damages in the event of a failure of title.").

Although we acknowledge Gulfstream's reliance on footnote 4 from *Black*, we again emphasize Gulfstream's actual "title" has not been challenged and there is not a third party involved as contemplated in *Black*. *See Black*, 357 S.C. at 471 n.4, 594 S.E.2d at 165 n.4 ("[W]here it is the wrongful act of the covenantor which causes the covenantee to be in litigation with the third party, then the covenantor would be liable for costs despite the fact that the covenantee prevailed."). We believe the situation our supreme court envisioned in *Black* was that in which a grantor deeds the same property to two or more individuals and although one of the grantees may be saved by a recording act, the grantor would still be liable to that grantee too. *See generally* Ray E. Sweat, *Race, Race-Notice and Notice Statutes: The American Recording System*, Prob. & Prop., May/June 1989, at 27 (discussing recording acts broadly). However, we do not believe our supreme court contemplated the situation here.

Finally, we note that our decision today does not prevent Gulfstream from seeking attorneys' fees in future contempt actions as a sanction if Palmetto continues to infringe upon Gulfstream's rights. *See Miller v. Miller*, 375 S.C. 443, 463, 652 S.E.2d 754, 764 (Ct. App. 2007) ("Courts, by exercising their contempt power, can

---

[3] *See Morris v. Townsend*, 253 S.C. 628, 635, 172 S.E.2d 819, 822 (1970) ("An easement gives no title to the land on which the servitude is imposed. It is, however, property or an interest in the land.").

award attorney's fees under a compensatory contempt theory.").  Although we strongly encourage the parties to resolve the issues as neighbors, we believe their history indicates litigation is likely to continue.[4]

**CONCLUSION**

Based on the foregoing, we affirm the circuit court's granting of summary judgment.

**AFFIRMED.**

**GEATHERS and HILL, JJ., concur.**

---

[4] This is the second of two cases between Gulfstream and Palmetto currently on appeal before our court.  *See* App. Case No. 2019-001466.  At oral arguments, counsel for the parties informed this court that they were again going to trial the Monday after oral arguments.