**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Allstate Property and Casualty Insurance Company,
Respondent,

v.

Natoshia Hamilton and Kenneth Collins Coogler,
Defendants,

Of Whom Natoshia Hamilton is the Appellant.

Appellate Case No. 2018-001675

———————

Appeal From Florence County
Michael G. Nettles, Circuit Court Judge

———————

Unpublished Opinion No. 2023-UP-200
Submitted May 3, 2021 – Filed May 24, 2023

———————

**AFFIRMED**

———————

Eric Marc Poulin, Roy T. Willey, and Angeline M. Larrivee, all of Poulin, Willey, Anastopoulo, LLC, of Charleston, for Appellant.

Alfred Johnston Cox, of Gallivan, White & Boyd, PA, of Columbia, for Respondent.

———————

**PER CURIAM:** In this declaratory judgment action, Natoshia Hamilton argues the circuit court erred in granting summary judgment to Allstate Property and Casualty Insurance Company (Allstate) because Allstate failed to accept the terms of her offer of compromise by issuing a manual check instead of a certified check in response to her settlement demand. Based on this alone, Hamilton asserts no enforceable settlement agreement exists. We disagree, and we affirm the order of the circuit court.[1]

## Facts and Procedural History

Hamilton sustained injuries in an automobile accident when Kenneth Coogler rear-ended her car. Coogler was driving his wife's vehicle, which was insured through an Allstate automobile policy (the Policy). On February 5, 2015, the Anastopoulo Law Firm (Law Firm) notified Allstate that it had been retained to represent Hamilton.

On January 15, 2016, Law Firm attorney Evan Williams sent Allstate adjuster Marsa King a ten-page, single-spaced settlement demand letter (with additional exhibits attached) seeking payment of the Policy's bodily injury coverage limits and execution of a release and specified affidavits. One section of this "time-limited demand for payment of policy limits" provided:

> Please be aware that our demand for policy limits is not negotiable and that <u>ALL</u> conditions of this offer of compromise must be met by the specified time limit. ***If any condition is not met, or if any additional condition is imposed by Allstate Insurance Company, including but not limited to conditions of indemnification or the waiver of any rights or claims not specified herein, this offer of compromise will be withdrawn, and we will obtain an excess judgment against your insured and enforce it against assets.***

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR. This is one of three cases before this court involving similar lengthy demand letters sent by this law firm. All three demand letters include swift turnaround times for compliance with numerous, at times internally inconsistent, demands. In these cases, three veteran circuit court judges ruled in favor of the insurance companies; one on a motion to enforce the settlement and two on motions for summary judgment in declaratory judgment actions.

In footnote one of the ten-page demand letter, Law Firm required the settlement funds "be paid by Cashier's Checks or Certified Bank Checks (<u>not drafts</u>) issued by [the] insurance company as follows: Natoshia Hamilton and the Anastopoulo Law Firm, LLC."  Regarding payment, the letter further demanded:

> <u>Payment must be made as described herein, and payment by any other method, including payment through the registry of any court or through the filing of an interpleader action, will not satisfy the terms of this offer of compromise and will result in the immediate and automatic withdrawal of this offer of compromise.</u>

The offer required acceptance by "performance of the requirements of this letter . . .".[2]

On January 20, 2016, Law Firm faxed Allstate an additional radiology bill to be included with Hamilton's demand package.  Allstate's records indicate it received Hamilton's demand package on January 21, 2016; the deadline for compliance required that Allstate's completed settlement packet be received "no later than 5:00 p.m. on January 26, 2016."

On January 26, Allstate hand-delivered Law Firm a check for $25,000, a covenant not to execute, and the completed affidavits.  Attorney Williams signed for and accepted the check and accompanying documents; however, on March 23, 2016, Eric Poulin, another Law Firm attorney, returned the check with a letter noting, "Allstate failed to accept this offer of compromise."  Other than advising, "Please do not try to trick us by sending us a check for this amount again," the letter provided no explanation for Hamilton's rejection of Allstate's acceptance of her settlement demand.

---

[2] Other documents required for acceptance of the offer included "sworn and notarized statements that there is no other insurance coverage available to her that could pertain to this loss" and a release.  With respect to the release, the demand letter stated, "Instead of acting in bad faith and trying to trick us, please just send a reasonable Release that does not include indemnification or the release of the property damage claims."

In letters dated April 13, April 19, and May 11, 2016, Allstate confirmed its offer of $25,000 to settle Hamilton's claims. On February 6, 2017, Allstate filed a declaratory judgment action seeking to enforce the settlement.

Hamilton timely answered and subsequently moved for summary judgment, arguing no enforceable settlement agreement existed because Allstate failed to comply with the terms of her offer of compromise when it tendered a manual check for the Policy's bodily injury limits. Allstate filed its own motion for summary judgment, noting it accepted Hamilton's offer of compromise by hand-delivering the $25,000 check and her requested release and coverage documents to Law Firm within the time demanded.

Following a hearing, the circuit court granted Allstate's motion for summary judgment, finding as a matter of law that "Allstate's acceptance and performance of the material terms of the demand constitute a valid acceptance." Hamilton filed a timely motion to reconsider, which the circuit court denied.

**Standard of Review**

"In reviewing a motion for summary judgment, the appellate court applies the same standard of review as the trial court under Rule 56(c), SCRCP." *Companion Prop. & Cas. Ins. Co. v. Airborne Exp., Inc.*, 369 S.C. 388, 390, 631 S.E.2d 915, 916 (Ct. App. 2006). "Summary judgment should be affirmed if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "When a circuit court grants summary judgment on a question of law, [an appellate court] will review the ruling de novo." *Wright v. PRG Real Estate Mgmt., Inc.*, 426 S.C. 202, 212, 826 S.E.2d 285, 290 (2019).

**Law and Analysis**

Hamilton argues the circuit court erred in granting Allstate's motion for summary judgment because Allstate failed to comply with the terms of her offer of compromise when it tendered a manual check instead of a certified check. Hamilton contends the form of check was a material term of her demand and Allstate rejected her offer—and presented a counter offer—when it tendered the manual check for the Policy's bodily injury limits. We disagree.

"In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009). "The necessary elements of a contract are an offer, acceptance, and

valuable consideration.  A valid offer 'identifies the bargained for exchange and creates a power of acceptance in the offeree.'"  *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491, 732 S.E.2d 205, 209 (Ct. App. 2012) (quoting *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 406, 581 S.E.2d 161, 166 (2003)).  "South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement."  *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989) (emphasis in original).

"To discover the intention of a contract, the court must first look to its language— if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect."  *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 498, 649 S.E.2d 494, 501 (Ct. App. 2007).  "The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof."  *Id.* at 498, 649 S.E.2d at 502.

> It has long been the policy of the court to encourage settlement in lieu of litigation, and courts have usually enforced settlement agreements.  There can be no doubt but that the trial court retains inherent jurisdiction and power to enforce agreements entered into in settlement of litigation before that court.

*Kinghorn as Tr. for the Mildred Ann Kinghorn Tr. dated 28 Apr. 2004 v. Sakakini*, 426 S.C. 147, 152, 825 S.E.2d 748, 750 (Ct. App. 2019) (quoting *Rock Smith Chevrolet, Inc. v. Smith*, 309 S.C. 91, 93, 419 S.E.2d 841, 842 (Ct. App. 1992)).

Here, the language in the demand letter requiring payment by certified check is anything but "perfectly plain."  *See Ecclesiastes Prod. Ministries*, 374 S.C. at 498, 649 S.E.2d at 501.  The footnote required, "Settlement funds must be paid by Cashier's Checks or Certified Bank Checks (not drafts) issued by your insurance company."  But, neither a cashier's check nor a certified bank check is "issued by the insurance company"—a bank representative must co-sign a certified check, and the bank itself issues a cashier's check.  *See* Emily Guy Birken, *Personal Check vs. Certified Check vs. Cashier's Check*, Forbes Advisor (August 30, 2020), https://www.forbes.com/advisor/banking/personal-check-vs-certified-check-vs-cashiers-check/ (last visited May 2, 2023) ("The difference between [a certified check and a cashier's check] is that a cashier's check draws on the bank's funds, rather than an individual account holder's funds.").  Thus, as the demand letter itself made the required form of payment unclear, it is difficult to understand Law Firm's argument that the form

of the admittedly negotiable check was an essential or material term of the settlement demand.[3]

In addition to the conflicting language within Law Firm's demand letter, Hamilton's own deposition testimony demonstrates the form of the check was not an essential or material term of her settlement demand. The only reason Hamilton could give as a basis for the rejection of Allstate's settlement check for the Policy limits and accompanying documentation was that the check "didn't meet our demand and that's all I would like to say." She conceded the letter demanded $25,000, Allstate issued a check for $25,000, and she had no reason to be concerned that she might have problems cashing or depositing the check.[4] Neither

---

[3] When asked about this during the oral argument of one of the other cases, *Allstate v. Goodwin*, Appellate Case No. 2018-001108, Hamilton's counsel repeatedly asserted "the reasonableness of this is not at issue" and "this is not about common sense" because the "mirror-image rule" operates to compel a ruling in Hamilton's favor under contract law. As the late Justice Bell aptly noted in *Weisz Graphics Division of Fred B. Johnson Co., Inc. v. Peck Industries, Inc.*, 304 S.C. 101, 106, 403 S.E.2d 146, 149 (Ct. App. 1991), the 'so-called "mirror-image' rule[ ] is well suited to simple, one time transactions, in which the parties contract face to face. However, it fails to accommodate the realities of much modern commercial practice." Nor does section 36-2-207 (2003) of the South Carolina Code, found within the "Sales" Chapter of our Uniform Commercial Code, operate to vitiate Allstate's compliance with the *material* (and nonconflicting) terms of the demand letter.

[4] In any event, her own settlement check would routinely issue from her own law firm's trust account. Rule 1.15 of the South Carolina Rules of Professional Conduct further supports the circuit court's finding that the form of the check was immaterial here because the rule permits an attorney to disburse trust account funds when the amount of the check is under $50,000 and is funded by an insurance company. *See* Rule 1.15(f)(1), RPC, Rule 407, SCACR ("A lawyer shall not disburse funds from an account containing the funds of more than one client or third person ('trust account') unless the funds to be disbursed have been deposited in the account and are collected funds."); Rule 1.5(f)(2)(iv), RPC, Rule 407, SCACR ("Notwithstanding Subsection (f)(1) above, a lawyer may disburse funds from a trust account at the lawyer's risk in reliance on the following deposits when the deposit is made . . . by a certified check, cashier's check, or other check drawn

Hamilton nor her attorneys could articulate an appropriate logical reason supporting the argument that the form of the check was essential or material to the parties' contract.[5]

We agree with the circuit court that Allstate complied with the essential and material terms of Hamilton's offer in seeking to pay the Policy limits to settle this case. As the circuit court explained, "[b]ecause Allstate complied with the terms of the demand, Hamilton was obligated to sign the Covenant not to Execute and resolve her claims for bodily injury." Thus, the circuit court did not err in granting Allstate's motion for summary judgment.

**Conclusion**

Based on the foregoing, the circuit court's order granting summary judgment is

**AFFIRMED.**

**KONDUROS and MCDONALD, JJ., and LOCKEMY, A.J., concur.**

---

by a depository institution or an insurance company, provided the insurance company check does not exceed $50,000 . . . .").

[5] The circuit court recognized that the actions here were "an attempt to get bad faith refusal to pay and *Tyger River* in trying to get excess coverage. I think that's clearly what this is all about, and I think that they did comply with the demand letter in all material ways." *See Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.C. 286, 170 S.E. 346 (1933). The trial judge further commented—and we agree—"[t]here is in the insurance industry bad faith, but this isn't it."