**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Allstate Fire and Casualty Insurance Company,
Respondent,

v.

Pamela Goodwin, Appellant.

Appellate Case No. 2018-001108

---

Appeal From Darlington County
Paul M. Burch, Circuit Court Judge

---

Unpublished Opinion No. 2023-UP-198
Heard February 1, 2021 – Filed May 24, 2023

---

**AFFIRMED**

---

Eric Marc Poulin, Lane Douglas Jefferies, Roy T. Willey, IV, and Angeline M. Larrivee, all of Poulin, Willey, Anastopoulo, LLC, of Charleston, for Appellant.

Alfred Johnston Cox and John Thomas Lay, Jr., both of Gallivan, White & Boyd, PA, of Columbia, for Respondent.

---

**PER CURIAM:** In this declaratory judgment action, Pamela Goodwin challenges the circuit court's finding that she entered an enforceable settlement agreement

with Allstate Fire and Casualty Insurance Company (Allstate) after she was seriously injured in a motorcycle accident caused by Allstate's insured. Goodwin argues the circuit court erred in granting Allstate's motion for summary judgment because Allstate did not comply with certain specific terms of her settlement demand letter by (1) failing to issue a certified bank check or cashier's check in accordance with her instructions and (2) failing to tender "the policy limits of all applicable policies." We disagree, and we affirm the order of the circuit court with respect to Allstate's proper tender of the $50,000 bodily injury coverage limits.[1]

**Facts and Procedural History**

In August 2014, Goodwin was riding an acquaintance's motorcycle when a vehicle driven by Allstate's insured, Helen Ham, struck the motorcycle at an intersection. Goodwin sustained significant injuries in the collision. Ham's vehicle was insured through an Allstate automobile policy (Policy) with the following coverage limits: $50,000 for bodily injury per person; $100,000 per accident; and $50,000 for property damage per accident. Goodwin obtained legal representation through the Anastapoulo Law Firm, LLC (Law Firm), and Allstate communicated with Law Firm over the course of several months in an attempt to tender the Policy's bodily injury coverage limits and settle Goodwin's personal injury claim.

On December 12, 2014, Law Firm attorney Roy T. Willey sent Allstate a nine-page, single-spaced settlement demand letter seeking payment of "the policy limits of all applicable policies" and the execution of a release and specified affidavits. Allstate received the demand letter on December 17. One section of this "time-limited demand" for payment provided:

> Please be aware that our demand for policy limits is not negotiable and that <u>ALL</u> conditions of this offer of compromise must be met by the specified time limit. ***If any condition is not met, or if any additional condition is imposed by*** **[sic]*****, including but not limited to***

---

[1] This is one of three cases before this court involving similar lengthy demand letters sent by this law firm. All three demand letters include swift turnaround times for compliance with numerous, and at times internally inconsistent, demands. In these cases, three veteran circuit court judges ruled in favor of the insurance companies; one on a motion to enforce the settlement and two on motions for summary judgment in declaratory judgment actions.

> ***conditions of indemnification or the waiver of any***
> ***rights or claims not specified herein, this offer of***
> ***compromise will be withdrawn, and we will obtain an***
> ***excess judgment against your insured and enforce it***
> ***against assets.***

The deadline given for Allstate to comply with "<u>ALL</u>" terms set forth in the demand letter—and thus settle Goodwin's bodily injury claim—was 5:00 p.m. on December 27, 2014.  In the letter, Goodwin made several demands, including "payment of all the policy limits of all applicable policies" and payment of the settlement funds "by Cashier's Checks, or Certified Bank Checks (<u>not drafts</u>) issued by your insurance company."  Regarding payment, the letter further demanded:

> <u>Payment must be made as described herein, and payment</u>
> <u>by any other method, including payment through the</u>
> <u>registry of any court or through the filing of an</u>
> <u>interpleader action, will not satisfy the terms of this offer</u>
> <u>of compromise and will result in the immediate and</u>
> <u>automatic withdrawal of this offer of compromise.</u>

The offer required acceptance by "performance of the requirements of this letter . . . ."[2]

Despite the short turnaround time during the holiday season, Allstate tendered a $50,000 manual check for Goodwin's bodily injury claim within the time frame required by the demand letter.  Allstate's settlement packet noted Goodwin could "pursue a property damage claim," and provided the affidavit and the release documents required by the letter.  However, Goodwin returned these documents and the settlement check, claiming Allstate "failed to comply with . . . [her] offer."

Allstate then filed this declaratory judgment action seeking findings that the parties had entered an enforceable contract settling the case and that Allstate had fulfilled its obligations under Ham's Policy.  In her amended answer, Goodwin claimed

---

[2] Goodwin also required a proposed release and affidavit from Ham stating "no other policies of insurance would apply" to Goodwin's claims.

Allstate failed to comply with the specific terms of her offer of compromise.[3] Following Goodwin's deposition, both parties moved for summary judgment.

The circuit court heard arguments and granted Allstate's motion for summary judgment. The circuit court found, *inter alia*, that Allstate complied with the material terms of Goodwin's demand letter and Goodwin did not present a property damage claim or demand in the letter.[4] Goodwin filed a Rule 59(e), SCRCP, motion, which the circuit court denied.

**Standard of Review**

"In reviewing a motion for summary judgment, the appellate court applies the same standard of review as the trial court under Rule 56(c), SCRCP." *Companion Prop. & Cas. Ins. Co. v. Airborne Exp., Inc.*, 369 S.C. 388, 390, 631 S.E.2d 915, 916 (Ct. App. 2006). "Summary judgment should be affirmed if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "When a circuit court grants summary judgment on a question of law, [an appellate court] will review the ruling de novo." *Wright v. PRG Real Estate Mgmt., Inc.*, 426 S.C. 202, 212, 826 S.E.2d 285, 290 (2019).

**Law and Analysis**

Goodwin argues the circuit court erred in finding an enforceable settlement agreement existed because Allstate did not (1) issue a certified bank check or cashier's check or (2) tender all applicable policy limits, which she now contends included the Policy's property damage limits. Goodwin claims the form of the check was a material term of her offer and that Allstate rejected the offer—and presented a counter offer—when it tendered a manual check for the Policy's bodily injury limits and failed to tender the property damage limits (for a motorcycle she did not own).

---

[3] Goodwin filed a separate action against Ham related to the underlying accident; that action has been held in abeyance pending resolution of the contract issues raised in this matter.

[4] It would have been difficult for the circuit court to find otherwise; Goodwin did not own the motorcycle involved in the collision, and Law Firm's own retainer agreement with Goodwin—presented as part of the summary judgment record—provided Law Firm was not "obligated or under employment to negotiate or settle property damage issues."

"In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009). "The necessary elements of a contract are an offer, acceptance, and valuable consideration. A valid offer 'identifies the bargained for exchange and creates a power of acceptance in the offeree.'" *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491, 732 S.E.2d 205, 209 (Ct. App. 2012) (quoting *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 406, 581 S.E.2d 161, 166 (2003)). "South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement." *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989) (emphasis in original).

"To discover the intention of a contract, the court must first look to its language— if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 498, 649 S.E.2d 494, 501 (Ct. App. 2007). "The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof." *Id.* at 498, 649 S.E.2d at 502.

> It has long been the policy of the court to encourage settlement in lieu of litigation, and courts have usually enforced settlement agreements. There can be no doubt but that the trial court retains inherent jurisdiction and power to enforce agreements entered into in settlement of litigation before that court.

*Kinghorn as Tr. for the Mildred Ann Kinghorn Tr. dated 28 Apr. 2004 v. Sakakini*, 426 S.C. 147, 152, 825 S.E.2d 748, 750 (Ct. App. 2019) (quoting *Rock Smith Chevrolet, Inc. v. Smith*, 309 S.C. 91, 93, 419 S.E.2d 841, 842 (Ct. App. 1992)).

## A. Certified Bank or Cashier's Check

Here, the language in the demand letter requiring payment by certified bank or cashier's check is anything but "perfectly plain." *See Ecclesiastes Prod. Ministries*, 374 S.C. at 498, 649 S.E.2d at 501. The footnote required, "Settlement funds must be paid by Cashier's Checks or Certified Bank Checks (not drafts) issued by your insurance company." But, neither a cashier's check nor a certified bank check is "issued by your insurance company"—a bank representative must co-sign a certified check, and the bank itself issues a cashier's check. *See* Emily Guy Birken, *Personal Check vs.*

*Certified Check vs. Cashier's Check*, Forbes Advisor (August 30, 2020), https://www.forbes.com/advisor/banking/personal-check-vs-certified-check-vs-cashiers-check/ (last visited May 2, 2023) ("The difference between [a certified check and a cashier's check] is that a cashier's check draws on the bank's funds, rather than an individual account holder's funds."). Thus, as the language of the demand letter itself made the required form of payment unclear, it is difficult to understand Law Firm's argument that the form of Allstate's admittedly negotiable check was an essential or material term of the settlement demand.[5]

In addition to the conflicting language within Law Firm's demand letter, Goodwin's deposition testimony demonstrates the form of the check was not an essential or material term of her settlement demand. The only reasons Goodwin could give as a basis for the rejection of Allstate's settlement packet were her beliefs that a certified check would "help[ her situation] along a lot faster," her feeling that Allstate did not take her seriously, and the fact that $50,000 "did[ no]t even come close" to what she needed to compensate her for her injuries. Allstate's counsel specifically asked Goodwin:

> Q: What are you demanding in that letter?
>
> A: I was demanding $50,000 and at a certain time limit. And it wasn't met. I mean, we were asked [sic] for it to be done by December 25th—where am I at?
>
> Q: I know it was the day after Christmas.

---

[5] When asked about this during oral argument, Goodwin's counsel repeatedly asserted "the reasonableness of this is not at issue" and "this is not about common sense" because the "mirror-image rule" operates to compel a ruling in Goodwin's favor under contract law. As the late Justice Bell noted in *Weisz Graphics Division of Fred B. Johnson Co., v. Peck Industries, Inc.*, 304 S.C. 101, 106, 403 S.E.2d 146, 149 (Ct. App. 1991), the "so-called 'mirror-image' rule[ ] is well suited to simple, one time transactions, in which the parties contract face to face. However, it fails to accommodate the realities of much modern commercial practice." Nor does section 36-2-207 of the South Carolina Code (2003), found within the "Sales" Chapter of our Uniform Commercial Code, operate to vitiate Allstate's compliance with the *material* (and non-conflicting) terms of the demand letter.

A: Yeah.  Yeah.  December the 25th.  And it—I mean, it's—I just wanted a—you know, a certified check—bank check because it just—that just helps it along a lot faster.

Goodwin's counsel then interjected to point out that the letter actually required Allstate's compliance by 5:00 p.m. on December 27.  Notably, Goodwin could not identify any material difference between a "bank check" and a manual check deposited into her attorney's trust account and then issued to her.[6]  Her repeated complaint in her deposition was simply, "you just didn't do what we asked."  In fact, neither Goodwin nor her attorneys could articulate a logical reason supporting the argument that the form of the check was essential or material to the settlement, particularly within the context of Law Firm's byzantine demand letter.[7]

## B.  Property Damage Coverage Limit

---

[6] In any event, such a settlement check to an injured party would routinely issue from a party's own law firm's trust account.  Rule 1.15 of the South Carolina Rules of Professional Conduct further supports the circuit court's finding that the form of the check was immaterial here because the rule permits an attorney to disburse trust account funds when the amount of the check is under $50,000 and is funded by an insurance company.  *See* Rule 1.15(f)(1), RPC, Rule 407, SCACR ("A lawyer shall not disburse funds from an account containing the funds of more than one client or third person ('trust account') unless the funds to be disbursed have been deposited in the account and are collected funds."); Rule 1.5(f)(2)(iv), RPC, Rule 407, SCACR ("Notwithstanding Subsection (f)(1) above, a lawyer may disburse funds from a trust account at the lawyer's risk in reliance on the following deposits when the deposit is made . . . by a certified check, cashier's check, or other check drawn by a depository institution or an insurance company, provided the insurance company check does not exceed $50,000 . . . .").

[7] After hearing the arguments of counsel, the circuit court noted it had addressed the same issue in a different case about a month or two before this summary judgment hearing.  The court then explained, "It doesn't matter what kind of check it is[,] it needs to be deposited and kept until it clears all banks.  And I've got a good friend who accepted a certified check . . . and it was forged and caused some real problems."  The court then granted Allstate's motion for summary judgment, noting, "I hope common sense prevails on this."

Goodwin next contends the circuit court erred in granting summary judgment because Allstate failed to tender the Policy's property damage coverage limits. Much like her demand letter, Goodwin's brief is vague on whether she actually sought payment for property damage in the demand letter. Indeed, Allstate did not expect such a claim from Goodwin because she did not own the motorcycle damaged in the accident.

Goodwin's brief to this court notes, "Appellant's offer of compromise states in pertinent part on page 4, 'we require payment of the policy limits of all applicable polices . . .' and on page 7, 'this offer relates only to personal injury and property damages claims.'" However, we found a separate reference to "property damage coverages" buried in a footnote addressing the language of any proposed release. Goodwin does not specifically discuss this reference in her brief, perhaps because the provision is incomplete and appears to have been "cut and pasted" from another case letter. Footnote 5 of the demand letter provides, in pertinent part:

> ***Moreover, please be aware that ___ [sic] will only be released with respect to the bodily injury and property damage coverages of the subject policy and that ___ [sic] will not be released with respect to any other policies or coverages not identified herein and that a request for a general release or a full and final release of ___ [sic] will be a counteroffer and rejection of this offer of compromise.***

(Emphasis and blank spaces in original).

In her demand letter, Goodwin appropriately focused on detailing her grave personal injuries. However, the "Summary of Damages" section of her demand letter does note, "Ms. Goodwin is also entitled to receive compensation for her property damage, as well as punitive damages." And, in the "Liability" section describing the severity of the collision and her injuries, she reports "emergency first responders had to cut off [her] pants and boots just to treat her." Yet, footnote three of Goodwin's demand letter pointedly states, "Instead of acting in bad faith and trying to trick us, please just send a reasonable proposed Release that does not include indemnification or the release of property damage claims."

When questioned by her own counsel in her deposition, Goodwin admitted that at the time of the demand letter, she was aware "there was a chance that the $50,000 would've been the only applicable policy Ms. Ham had." However, she also noted

she was entitled to compensation for several hundred dollars' worth of clothing lost in the accident. Her cellphone, worth fifty dollars, was also destroyed. Goodwin confirmed Allstate compensated her friend for the loss of his motorcycle.

As the circuit court recognized, Allstate's cover letter enclosing the $50,000 settlement check and responsive documents noted the release provided was for Goodwin's bodily injury claim only (as required by the demand letter). This preserved Goodwin's right to pursue a claim for her damaged clothing and cell phone. We agree with the circuit court that Goodwin did not assert a property damage claim in the demand letter when she sought "payment of the policy limits of all applicable polices." This result is necessitated by the language of her own offer of compromise seeking "a reasonable proposed Release that does not include indemnification or the release of property damage claims." Goodwin admitted in her deposition that had Allstate compensated her for any property losses, she would have expected to sign a release of her damaged property claim. She further admitted the Policy's $50,000 bodily injury limits might be Ham's only "applicable coverage." Thus, Goodwin and Allstate reached no agreement as to any claim for the actual value of Goodwin's lost property.

## Conclusion

We agree with the circuit court that Allstate fulfilled its obligations under the bodily injury provision of the Policy by tendering Ham's bodily injury coverage limits and executing the documents required by Law Firm's demand letter. Because the settlement was valid and enforceable, Goodwin is directed to sign the Covenant not to Execute upon receipt of Allstate's tender of a new $50,000 check, thus resolving any bodily injury claim arising from her accident with Ham.

Accordingly, the circuit court's order granting Allstate's motion for summary judgment is

**AFFIRMED.**

**KONDUROS and MCDONALD, JJ., and LOCKEMY, A.J., concur.**